**POMERANTZ LLP**
Jordan L. Lurie, State Bar No. 130013
jllurie@pomlaw.com
Ari Y. Basser, State Bar No. 272618
abasser@pomlaw.com
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 432-8492

**THE LAW OFFICE OF ROBERT L. STARR**
Robert L. Starr, State Bar No. 183052
robert@starrlaw.com
23901 Calabasas Road, Suite 2072
Calabasas, CA 91302

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN FERRY and MOANA HANA FERRY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PORSCHE CARS NORTH AMERICA, INC., and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:21-cv-05715-GW (ASx)<br><br>Assigned to: Hon. George H. Wu<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**(1) VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE, SECTION 17200,** *et seq.*<br><br>**(2) VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE SECTION 1770,** *et seq.*<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs John Ferry and Moana Hana Ferry ("Plaintiffs"), individually and on behalf of all other members of the public similarly situated, bring this action against Defendant Porsche Cars North America, Inc., ("Defendant" or "PORSCHE"), upon information and belief, except as to their own actions, the investigation of their counsel, and facts that are a matter of public record. The term "Vehicle" shall refer to the 2011 Porsche Cayenne vehicle purchased and owned by Plaintiffs, VIN WP1AE2A25BLA93177. Plaintiffs allege as follows:

## INTRODUCTION

1.  This class action arises out of PORSCHE's failure to accurately and comprehensively identify the vehicle parts that should properly be classified as "high-cost emissions warranty parts" under the California Emissions Control System Warranty (the "California Emissions Warranty" or "Emissions Warranty") requirements and covered under the California Emissions Warranty for 7-years and 70,000 miles.

2.  Instead, in order to minimize PORSCHE's warranty exposure, PORSCHE has unilaterally limited the parts that should be covered under the Emissions Warranty for 7-years and 70,000 miles, including the parts specifically identified by Plaintiffs.

3.  By not comprehensively identifying the parts that should be included as "high-cost" warranty parts, PORSCHE is able to limit the warranty coverage for those parts to only 4-years and 50,000 miles.

4.  By this action, Plaintiffs seek reimbursement for, *inter alia*, all out of pocket costs paid for repairs that should have been covered under the 7-years and 70,000-mile Emissions Warranty and an injunction to compel PORSCHE to properly identify parts as high-priced warranty parts.

## BACKGROUND

5.  For decades, PORSCHE has been in the business of importing and distributing PORSCHE vehicles in the State of California, with the intent to sell

1  PORSCHE vehicles to consumers in California. As such, the PORSCHE vehicles

2  have been subject to state and federal regulations regarding both emissions

3  standards and regarding PORSCHE's obligations to provide consumers with

4  warranties relating to emissions parts.

5    6. Specifically, dating back over 20 years, California Code of

6  Regulations, Title 13, Section 2035, *et seq*., entitled "Emission Control System

7  Warranty Requirements for 1990 and Subsequent Model Year Passenger Car,

8  Light-Trucks, and Medium-Duty Vehicles and Engines ("the CCR") has required

9  PORSCHE to identify to the California Air Resources Board ("CARB") all

10  vehicle parts that are "high-priced" "warranted parts," and has required

11  PORSCHE to provide a 7-year 70,000-mile warranty to California consumers

12  relating to all "high-priced" "warranted parts." This provision is sometimes

13  referred to as the "High-Cost Emissions-Related Parts Warranty" or the

14  "California Emission Control System Warranty."

15    7. The CCR very clearly defines the methodology that PORSCHE is

16  required to use in order to identify which parts should be covered as emissions

17  parts. Furthermore, the CCR very clearly defines the methodology that PORSCHE

18  is required to use in order to identify which parts should be covered by the 7-year

19  70,000-mile warranty.

20    8. Pursuant CCR Section 2035, with regard to 1990 and subsequent

21  model year vehicles, a "warranted part" is defined as, "any part installed on a

22  motor vehicle or motor vehicle engine by the vehicle or engine manufacturer, or

23  installed in a warranty repair, which affects any regulated emission from a motor

24  vehicle or engine which is subject to California emission standards."

25    9. Furthermore, CCR Section 2037(b) states: "The manufacturer of each

26  motor vehicle or motor vehicle engine shall warrant to the ultimate purchaser and

27  each subsequent purchaser that the vehicle or engine is:

28

(1)   Designed, built, and equipped so as to conform with all applicable regulations adopted by the Air Resources Board pursuant to its authority in chapters 1 and 2, part 5, division 26 of the Health and Safety Code; and

(2)   Free from defects in materials and workmanship which cause the failure of a warranted part to be identical in all material respects to the part as described in the vehicle or engine manufacturer's application for certification, including any defect in materials or workmanship which would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate, for a period of three years or 50,000 miles, whichever first occurs; and

(3)   Free from defects in materials and workmanship which cause the failure of a warranted part described in section (c) below for seven years or 70,000 miles, whichever first occurs."

10.   California Code of Regulations Section 2037(c) deals with "high-priced warranted parts" under the California Emission Control System Warranty and states:

(1)   Each manufacturer shall identify in its application for certification the "high-priced" warranted parts which are:

(a)   For 1990 through 2007 model year vehicles: [i] included on the Board's "Emissions Warranty Parts List" as last amended February 22, 1985, incorporated herein by reference, and; [ii] have an individual replacement cost at the time of certification exceeding the cost limit defined in section (c)(3);

(b)   For 2008 and subsequent model year vehicles: [i] subject to coverage as a warranted part in section (b)(2) above, and; [ii] have an individual replacement cost at the time of certification exceeding the cost limit defined in section (c)(3).

(2)     The replacement cost shall be the retail cost to a vehicle owner and include the cost of the part, labor, and standard diagnosis. The costs shall be those of the highest-cost metropolitan area of California.

(3)     The cost limit shall be calculated using the following equation:

Cost limit {n)} = $300 x (CPI{n-2]}/ 118.3

Cost limit {n) is the cost limit for the applicable model year of the vehicle rounded to the nearest ten dollars.

11.     In summary, any part that either effects a vehicle's emissions, or causes a vehicle's on-board diagnostic malfunction indicator light to illuminate is, for the purpose of determining coverage under CCR, considered a "warranted part." If a part is a "warranted part," the part shall have a 3-year 50,000-mile warranty.

12.     However, if the part is a "high-priced" warranted part, as defined by 2037(c) of the CCR, the part, the labor cost of diagnosing the part failure, and the labor cost of replacing the part shall have a 7-year 70,000-mile Emissions Warranty pursuant to the High-Cost Emissions-Related Parts Warranty.

**PORSCHE'S CONDUCT**

13.     At all times herein relevant, for each new motor vehicle intended to be distributed by PORSCHE in the State of California, at the time of distribution, PORSCHE has purported to accurately notify CARB of the parts which should be covered as emissions related parts, also known as warranted parts. Furthermore, at all times herein relevant, for each new motor vehicle intended to be distributed by PORSCHE in the State of California, at the time of distribution, PORSCHE has purported to accurately notify CARB of the parts which should be covered under the 7-year 70,000-mile California Emissions Warranty.

14.     At all times herein relevant, for each new vehicle intended to be distributed by PORSCHE in the State of California, at the time of distribution, PORSCHE has purported to provide accurate written warranty documents with the

vehicle, which purport to accurately identify all of the vehicle parts that are covered under the 3-year 50,000- mile California Emissions Warranty, as well as the 7-year 70,000-mile California Emissions Warranty.

15.     PORSCHE has engaged in a systematic business practice of omitting from the PORSCHE warranty booklet provided to owners and lessees at the time of sale or lease, and in resources provided by PORSCHE to its dealerships both at the time of sale or lease and afterwards, all of the parts that should be identified as emissions related warranty parts covered under the 3-year 50,000-mile warranty, and the "high-priced" warranted parts that should be covered under the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty.  PORSCHE classifies *some* of the parts as being covered by the 3-year 50,000-mile California Emissions Warranty, and *some* of the "high-priced" warranted parts as being parts covered under the 7-year 70,000-mile California Emissions Warranty, but not all of the parts that should be covered either by the 3-year 50,000-mile California Emissions Warranty, or the 7-year 70,000-mile California Emissions Warranty.

16.     Thereafter, when PORSCHE vehicles are presented by consumers to PORSCHE authorized repair facilities for repair, PORSCHE fails to provide coverage under the 3-year 50,000-mile California Emissions Warranty or the 7-year 70,000-mile California Emissions Warranty for all of the repairs that should be covered under said emissions warranties.

17.     As a result, California consumers have to pay out of pocket for these repairs which, by operation of California law, should be paid for by PORSCHE.

18.     PORSCHE engages in the alleged misconduct in order to reduce the amount of money that PORSCHE has to pay out on warranty-related repairs and warranty claims.

19.     If PORSCHE properly identified all of the warranted parts and high-priced warranted parts that should be correctly identified as such, then PORSCHE

1   dealerships would properly provide coverage for said high-priced parts under

2   warranty.

3       20.     The failure by PORSCHE to properly identify parts as warranted

4   parts and "high-priced" warranted parts under the CCR violates California

5   Business and Professions Code section 17200, *et seq*. (the "UCL") and the

6   California Consumers Legal Remedies Act, Cal. Civ. Code Section 1750, *et seq*.

7   (the "CLRA"), and is intended to minimize the amount of money that PORSCHE

8   has to pay out in warranty claims.

9       21.     Plaintiffs and other consumers have suffered damage and lost money

10  or property as a result of PORSCHE's wrongful conduct.

11      22.     Plaintiffs' theory does not depend on the premise that CARB was

12  deceived by the information that PORSCHE submitted, and Plaintiffs are not

13  accusing CARB of mismanagement or blaming CARB for PORSCHE's

14  inaccuracy. PORSCHE alone is responsible for selecting and identifying to CARB

15  the parts that PORSCHE has unilaterally identified as warranted parts and "high-

16  cost Emissions Warranty parts" as part of its application for vehicle certification.

17  That list may be correct as far as it goes or as far as CARB may know.  But, as

18  Plaintiffs allege, the list is incomplete, as evidenced by Plaintiffs' own experience.

19                          **JURISDICTION AND VENUE**

20      23.     This Court has original jurisdiction over the subject matter of this

21  action pursuant to 28 U.S.C. § 1332(d)(2)(A) because: (i) members of the Class

22  are citizens of a state different from that of PORSCHE; and (ii) aggregating the

23  claims of individual Class members, the total matter in controversy exceeds the

24  sum or value of $5,000,000, exclusive of interests and costs. Further, 28 U.S.C. §

25  1332(d)(5) does not apply because (i) PORSCHE is not a state, state official, or

26  other governmental entity against whom the Court may be foreclosed from

27  ordering relief, and (ii) the number of members of the Class in the aggregate

28  exceeds 100.

24.     This Court has personal jurisdiction over PORSCHE because PORSCHE has sufficient minimum contacts with California, having intentionally availed itself of the California market so as to render the exercise of jurisdiction over it by this District Court consistent with traditional notions of fair play and substantial justice.

25.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because PORSCHE conducts business within the State of California, has failed to designate with the office of the California Secretary of State a principal place of business in California, and a substantial part of the events giving rise to the claims alleged herein occurred in this District.

26.     All of the wrongful acts complained of by Plaintiffs occurred in the state of California, county of Los Angeles.

**PARTIES**

27.     Plaintiff John Ferry ("John") is an individual.

28.     Plaintiff Moana Hana Ferry ("Moana") is an individual.

29.     PORSCHE was and is, upon information and belief, a California corporation, doing business in California.

30.     The true names and capacities of Defendants sued in this Complaint as Does 1 through 10, inclusive, are currently unknown to Plaintiffs, and therefore Plaintiffs sue such Defendants by such fictitious names.

31.     Plaintiffs are informed and believe, and thereon alleges, that DOES 1 through 10 were the partners, agents, owners, shareholders, managers, or employees of PORSCHE at all relevant times.

32.     Plaintiffs are informed and believe, and on that basis allege, that each of the fictitiously named Defendants was in some manner legally responsible for the actionable and unlawful actions, policies and practices as alleged herein. Plaintiffs will amend this Complaint to set forth the true names and capacities of said Defendants, along with the appropriate charging

allegations, when the same have been ascertained, as may be necessary. Each reference in this Complaint to "PORSCHE" or "Defendant" is also a reference to all Defendants sued as Does 1 through 10.

33.     Plaintiffs reserve the right to expand, limit, modify, or amend these allegations at any time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

## PLAINTIFFS' FACTS

34.     Plaintiffs paid for repairs to the VEHICLE which should have been covered under the high-priced Emissions Warranty. As a result, Plaintiffs have suffered damage.

35.     On information and belief, PORSCHE's failure to provide proper coverage was an intentional omission by PORSCHE designed to limit PORSCHE's warranty exposure and part of PORSCHE's scheme to fail to properly and comprehensively identify all of the parts that should be identified as high-priced warranted parts and covered for 7-years or 70,000 miles under the California Emissions Warranty.

36.     The details of how PORSCHE actually applied the CCR formula are exclusively within PORSCHE's possession. Similarly, the information regarding what other parts satisfied the CCR requirements but were not identified by PORSCHE as Emissions Warranty parts and high-priced Emissions Warranty parts also are in the exclusive possession of PORSCHE.

37.     When PORSCHE vehicles are presented to PORSCHE dealerships for repairs of defects which should be covered under the 7-year 70,000-mile California Emissions Warranty, but are not identified by PORSCHE's warranty booklets and to dealerships as being covered, PORSCHE refuses to provide coverage under the Emissions Warranty. Plaintiffs presented the VEHICLE to a PORSCHE authorized repair facility for repairs prior to the end of the 7-year 70,000-mile California Emissions Warranty period for high-priced emissions

1    parts. Plaintiffs were wrongfully denied warranty coverage.

2        38.    The reason that Plaintiffs were charged for said repairs was not the

3    result of an individual issue relating to a PORSCHE Dealership, or an oversight

4    by a PORSCHE Dealership in failing to identify the repairs as repairs that should

5    have been covered under the California Emissions Warranty, or specifically the

6    7-year 70,000-mile California Emissions Warranty. Rather, Plaintiffs were

7    charged for said repairs because of PORSCHE's uniform and systematic

8    business practice of intentionally refusing to identify in the PORSCHE warranty

9    booklet, and in resources provided to its dealerships, all of the parts that should

10   be identified as high-priced warranted parts under California law in order to limit

11   the amount of warranty claims paid by PORSCHE.

12       39.    CCR section 2037(c)(1)(B) regarding "High-priced Warranty Parts"

13   requires PORSCHE to identify the "high-priced warranted parts . . . which have

14   an individual replacement cost at the time of certification exceeding the cost

15   limit defined in section (c)(3)."

16       40.    PORSCHE intentionally failed to identify all said components in

17   order to reduce the amount of money that PORSCHE spends on warranty-related

18   repairs. If PORSCHE complied with California law and properly identified all

19   parts as high-priced warranted parts that should be identified as such, then

20   PORSCHE dealerships would properly provide warranty coverage for said high-

21   priced warranted parts.

22       41.    PORSCHE's conduct violates California's unfair business practices

23   statute, California Business and Professions Code section 17200, et seq. (the

24   "UCL"), and violates the Consumers Legal Remedies Act, Civil Code section

25   1750, et seq.

26       42.    Plaintiffs and other members of the Class have suffered damage as a

27   result of PORSCHE's wrongful conduct.

28   ///

**REPAIRS AT 66,286 MILES**

43.    At 66,286 miles, Plaintiffs presented the Vehicle to Rusnak Westlake Porsche ("Rusnak"), located at 3839 Auto Mall Drive, Thousand Oaks, California 91362, because the engine started to overheat. Rusnak is a Porsche factory authorized repair facility.

44.    Rusnak diagnosed the Vehicle as having a defective coolant pump. Plaintiffs were advised that Plaintiffs would have to pay to repair the defective coolant pump. Plaintiffs were wrongfully denied warranty coverage. As a result, Plaintiffs paid $1,179.78 relating to the repair at 66,286 miles. The Vehicle was returned to Plaintiffs, but was brought back to Rusnak at 66,762 miles for further repairs relating to the thermal management system. As a result of the failures of the thermal management system, the Vehicle's engine underwent extensive repair work. Although some of the repairs were covered under goodwill, Plaintiffs had to pay $10,894.22 for the repairs at 66,762 miles. These repairs were needed as a direct result of the failure of the thermal management system. The repair records at 66,762 miles indicated that an engine coolant crossover pipe had failed, however it is unclear from the records at 66,762 miles if the extensive engine repairs were needed due to the failed coolant crossover pipe or due to the failed coolant pump.

45.    The coolant pump should have been covered under the high-priced California Emissions Warranty, because the cost to repair the coolant pump far exceeded the high-priced threshold. With regard to 2011 Model Year vehicles, the high-cost threshold is less than $600.00. That means that if a repair costs $600.00 or more, including the cost of diagnosis, parts and labor, and if the part is covered under the California Emissions Warranty, then the repair is covered under the 7-year 70,000-mile high-priced warranty. Plaintiffs paid $1,179.78 for the repairs at 66,286, far in excess of $600.00. Furthermore, Alldata, an aggregator of automotive repair costs, indicates that the coolant pump itself costs

$463.49, and the labor to replace the part takes 3.8 hours. This does not include the cost to diagnose the defect, or the cost of supplies like coolant. Even taking into consideration an increase in the price of the part from 2011 to the present time, at a very conservative estimated labor rate of $125.00 per hour, the cost of the repair, when taking into consideration the cost of parts, labor and supplies, exceeds $600.00. A similar analysis would find that the cost of the repairs exceeds the high-cost threshold for all Model Year Class Vehicles, as defined herein.

46.     Furthermore, the coolant pump is an emissions-related part because a defect in the coolant pump directly increases emissions regulated by the State of California, including greenhouse gases harmful to the environment. The coolant pump is part of the Vehicle's thermal management system. The coolant pump facilitates circulating coolant throughout the engine, which heats up the coolant, then the coolant is circulated to the transmission, resulting in faster heating of the transmission to operating temperature. The purpose of heating the transmission to operating temperature as fast as possible is to minimize friction loss. Friction loss is an engineering term which relates to the amount of energy that is expended as the result of friction. Minimizing friction loss reduces emissions. The Vehicle is designed with a thermal management system, and coolant pump, which reduces friction loss. When the coolant pump is not working properly, leaking coolant, and not pumping coolant at the proper pressure, greenhouse gas emissions are increased.

47.     Additionally, the Vehicle's coolant pump is so sophisticated that its functionality is controlled by vacuum, and by a circular fixture which when activated, encases the coolant impeller. The purpose of encasing the coolant pump impeller is to reduce or increase the flow of coolant throughout the engine based upon the engine's overall thermal management system and emissions strategies. The circular fixture works much like a thermostat, to regulate the

circulation of coolant throughout the engine. The coolant pump installed in the Vehicle is an integral part of emissions control in the Vehicle. A picture of the impeller and circular fixture, in the open and closed position, is as follows:



Note

Encased coolant pump,
high delivery rate

Encased coolant pump,
low delivery rate

**PLAINTIFFS' CLASS ACTION ALLEGATIONS**

48.    Plaintiffs re-allege and incorporate by reference each allegation set forth above.

49.    Plaintiffs bring this class action pursuant to Federal Rules of Civil Procedure Rules 23(a), (b)(2) and (b)(3) on behalf of themselves and members of the Class as defined below.

50.    Excluded from the Class are Defendant, and its subsidiaries and affiliates; its current and former officers, directors, and employees (and members of their immediate families); and the legal representatives, heirs, successors or assigns of any of the foregoing.

51.    All claims alleged herein arise under California law for which Plaintiffs seek relief authorized by California law.

52.    The Class Vehicles are defined as all PORSCHE vehicles which are fitted with a coolant pump identified as SKU part number PAC-121-018A, as well as all superseded coolant pump part numbers. These coolant pumps are installed in Model Year 2011 through 2018 Porsche Cayenne hybrid vehicles and 2012 through 2016 Porsche Panamera hybrid vehicles ("Class Vehicles").

53.    Plaintiffs' proposed class consists of and is defined as follows:

> All persons in the State of California who have been owners or lessees of Class Vehicles and who have paid for repairs and parts pertaining to defective coolant pumps that should have been covered under PORSCHE's "high-priced warranted parts" 7-year 70,000-mile California Emissions Warranty (the "Class").

54.    As required by Fed. R. Civ. P. 23(a)(2) and (b)(3), there are questions of law and fact common to the Class, and those common questions predominate over any questions affecting only individual members. Among the common questions of law and fact include:

(a)    Whether PORSCHE has failed, and is failing, to comply with the High-Cost Emissions-Related Parts Warranty by failing to provide a

7-year 70,000-mile California Emissions Warranty for parts that should have been identified by PORSCHE as high-priced warranted parts pursuant to the CCR relating to the Class Vehicles, including but not limited to coverage of the coolant pump.

(b)   Whether PORSCHE has failed, and is failing, to identify for consumers and dealerships the all of the parts that should be identified as high-priced warranted parts, and thus covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty relating to the Class Vehicles, including but not limited to coverage of the coolant pump.

(c)   Whether PORSCHE has engaged in, and is engaging in, a systematic business practice of intentionally failing to identify all of the parts that should be identified as high-priced warranted parts and thus covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty under the CCR relating to the Class Vehicles, including but not limited to coverage of the coolant pump.

(d)   Whether PORSCHE has failed, and is failing, to identify all of the parts that should be identified as high-priced warranted parts and thus covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty in an effort to reduce the amount of money that PORSCHE spends on warranty-related repairs relating to the Class Vehicles, including but not limited to coverage of the coolant pump.

(e)   Whether PORSCHE's conduct of failing to identify all of the parts that should be identified as high-priced warranted parts and thus covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty results in consumers suffering financial loss

relating to the Class Vehicles, including but not limited to coverage of the coolant pump.

(f)     Whether PORSCHE's conduct of failing to identify all of the parts relating to the Class Vehicles, including but not limited to coverage of the coolant pump, that should be identified as high-priced warranted parts and thus covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty results in wrongfully minimizing the amount of money that PORSCHE has to pay out in warranty claims.

(g)     Whether PORSCHE's conduct of failing to identify all of the parts that should be identified as high-priced warranted parts relating to the Class Vehicles, including but not limited to coverage of the coolant pump, and thus covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty violates California law.

(h)     Whether PORSCHE has engaged in, and is engaging in, unlawful and unfair business practices in violation of California Business & Professions Code section 17200, *et seq.* with regard to PORSCHE's failure to identify all of the high-priced warranted parts relating to the Class Vehicles, including but not limited to coverage of the coolant pump, that should be covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty.

(i)     Whether Plaintiffs and Class members are entitled to injunctive relief regarding PORSCHE's failure to identify all of the high-priced warranted parts relating to the Class Vehicles, including but not limited to coverage of the coolant pump, that should be covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty.

(j)     The appropriate amount of restitution, or monetary penalties resulting from PORSCHE's violations of California law.

(k)     Whether PORSCHE has engaged in, and is engaging, in concealment pertaining to PORSCHE's failure to identify all of the high-priced warranted parts relating to the Class Vehicles, including but not limited to coverage of the coolant pump, that should be covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty.

55.     Numerosity: As required by Fed. R. Civ. P. 23(a)(1), the members of the Class are so numerous that joinder of all Class members would be unfeasible and impractical, and the resolutions of their claims through the procedure of a class action will be of benefit to the Parties and the Court.  The membership of the entire Class is unknown to Plaintiffs at this time; however, the Class is estimated to be greater than one hundred (100) individuals and the identity of such membership is readily ascertainable by inspection of Defendant's records.

56.     Typicality: As required by Fed. R. Civ. P. 23(a)(3), Plaintiffs' claims are typical of the claims of all Class members since Plaintiffs and all members of the Class suffered damages as result of Defendant's concealment and wrongful conduct set forth herein.

57.     Adequacy: As required by Fed. R. Civ. P. 23(a)(4), Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have no interests adverse or antagonistic to those of the Class and has retained counsel competent and experienced in class action litigation who will zealously prosecute this matter on behalf of the Class to its conclusion

58.     Superiority: As required by Fed. R. Civ. P. 23(b)(3), the nature of this action makes the use of class action adjudication superior to other methods. A class action will achieve economies of time, effort, and expense as compared

with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the entire class.

59.     Defendant keeps extensive computerized records of its customers. Defendant has one or more databases through which a significant majority of Class members may be identified and ascertained, and it maintains contact information, including email and home mailing addresses, through which notice of this action could be disseminated in accordance with due process requirements.

60.     Class certification of Plaintiffs' claims is also appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiffs and the Class.

## **TOLLING OF THE STATUTE OF LIMITATIONS**

61.     PORSCHE has actively engaged in misleading, and dishonest conduct relating to its failure to properly identify all of the parts that should be covered under the 7-year 70,000-mile California Emissions Warranty. PORSCHE has engaged in said misleading, dishonest and wrongful conduct both with regard to its representations to consumers and to CARB. Despite acting diligently, Plaintiffs and the Class cannot be reasonably expected on their own to learn or discover what parts and repairs should be identified as high-priced and covered under the 7-year 70,000-mile California Emissions Warranty. Therefore, the discovery rule is applicable to the claims asserted by Plaintiffs and members of the Class, and the statute of limitations for bringing the claims set forth herein should be tolled.

62.     Specifically, Plaintiffs have acted diligently by presenting the Vehicle to Rusnak, a PORSCHE factory authorized repair facility, for repairs. The issue of if the Class Vehicles' coolant pumps should be covered under the

high-priced California Emissions Warranty is a highly technical issue which requires detailed and extensive engineering and automotive design knowledge. PORSCHE and Rusnak exclusively possess this knowledge, but Plaintiffs do not. Plaintiffs acted diligently in presenting the Vehicle to Rusnak for repairs and relying on the representations by both Rusnak and by PORSCHE, via the warranty booklet, that the cost of repair or replacement of a failed coolant pump was not covered under the Emissions Warranty. Plaintiffs subsequently discovered that the coolant pump should have been covered under the 7-year 70,000-mile warranty, and took action within the appropriate time period after discovery.

63.     PORSCHE has actual and constructive knowledge that it is violating California law by failing to identify the coolant pump, and other parts that should be designated as high-priced warranted parts, and by failing to provide a 7-year 70,000-mile California Emissions Warranty relating to said parts. PORSCHE has concealed from Plaintiffs and members of the Class that PORSCHE is violating California law as set forth herein.

64.     Any applicable statute of limitation is tolled by PORSCHE's knowledge, active concealment, and wrongful conduct set forth herein. PORSCHE is further estopped from relying on any statute of limitation because of its concealment set forth herein.

**FIRST CLAIM FOR RELIEF**

**Violation of California Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

65.     Plaintiffs re-allege and incorporate by reference each allegation set forth above.

66.     California Business and Professions Code section 17200, et seq. (the "UCL") prohibits "any unlawful, unfair or fraudulent business act or practice." PORSCHE has committed acts of unfair competition proscribed by the UCL,

1   including the acts and practices alleged herein.

2        67.    The UCL imposes strict liability. Plaintiffs need not prove that

3   PORSCHE intentionally or negligently engaged in unlawful or unfair business

4   practices – only that such practices occurred.

5        68.    PORSCHE is a "person" as defined by Business & Professions Code

6   § 17201.

7        69.    As a direct and proximate result of PORSCHE's acts and practices

8   in violation of the UCL, Plaintiffs and members of the Class have suffered injury

9   in fact and lost money or property as set forth above and will continue to do so.

10                            **Unlawful Prong**

11       70.    A business practice is "unlawful" under the UCL if it is forbidden

12  by law or regulations, including standard of professional conduct.

13       71.    The violation of any law or regulation may serve as the predicate for

14  a violation of the "unlawful" prong of the UCL.

15       72.    PORSCHE failed to comply with the California Emissions Warranty

16  requirements pursuant to the CCR by failing to provide 7-year 70,000-mile

17  warranty coverage for all parts that should be designated by PORSCHE as high-

18  priced emissions parts. The California Emissions Warranty applies to all Class

19  Vehicles. 13 CCR 2037(a). Pursuant thereto, manufacturers shall warrant that

20  vehicles conform with the California Air Resources Board regulations, and are

21  free from defects which cause the failure of a warranted part to perform as

22  described in the application for certification, including defects which would

23  cause the vehicle's on-board diagnostic malfunction indicator to illuminate, for 3

24  years or 50,000 miles. 13 CCR 2037(b)(1)-(2). The vehicle manufacturer is

25  PORSCHE, which is the manufacturer granted certification for the Class

26  Vehicles. 13 CCR 2035(c)(5). The warranty period shall be 7 years or 70,000

27  miles for high-priced warranted parts. 13 CCR 2037(b)(3). High-priced parts

28  warranted parts are those parts which, when taking into consideration the cost to

diagnose, replace and pay for the failed part, exceed the cost limit defined in 13 CCR 2037(c)(3). PORSCHE has failed to provide 7 year 70,000 mile warranty coverage all parts that PORSCHE should have designated as high priced emissions parts. The failure has resulted in damage to Plaintiffs and members of the Class.

73.     Moreover, while Plaintiffs do not yet know the specific information that PORSCHE did or did not provide to CARB, on information and belief, PORSCHE did not designate all of the parts as high-priced warranted parts that should be covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty. Thereby, PORSCHE also was able to avoid identifying all of the parts that PORSCHE should have identified as high-priced emissions parts in the warranty books for the Class vehicles, which purport to identify all parts covered under the high priced California Emissions Warranty for 7-year/70,000 mile California Emissions Warranty. Thus, PORSCHE's violation of § 2037(c)(1)(B) directly affected communications with consumers. By violating Section 2037(c)(1)(B), PORSCHE was able to avoid disclosing in the warranty books all of the parts that should have been identified as high-priced emissions parts, thus saving money by reducing warranty coverage claims.

74.     PORSCHE's acts of unlawful competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief.  Plaintiffs also seek attorneys' fees and costs pursuant to, inter alia, C.C.P. § 1021.5.

### Unfair Prong

75.     PORSCHE's conduct violates the unfair prong of the UCL.

76.     An act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition and is not an injury the consumers themselves could reasonably have avoided. An act or practice also is unfair if it offends an established public policy or is

immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. An act or practice also is unfair if Plaintiffs' claims are "tethered" to specific constitutional, statutory or regulatory provisions.  PORSCHE's conduct violates all of these definitions.

77.     As alleged above, PORSCHE engages and has engaged in a systematic business practice of intentionally failing to identify in the PORSCHE warranty book at the time of distribution, and in resources provided to its dealerships, numerous parts that PORSCHE is obligated to identify as high-priced warranted parts by operation of law. PORSCHE does this in an effort to reduce the amount of money that PORSCHE spends on warranty-related repairs knowing that it would be very difficult if not impossible for most consumers to discover this unlawful conduct. If PORSCHE complied with California law, then PORSCHE dealerships would properly provide warranty coverage for said high-priced warranted parts.

78.     Further, PORSCHE's conduct is unfair because it intentionally refuses to provide warranty coverage for the sole purpose of wrongfully limiting its warranty claims, with no regard for the fact that the public is being forced to pay for repairs which should be covered under the 7-year 70,000-mile California Emissions Warranty. Plaintiffs and members of the Class have suffered injury in fact and lost money or property as a result of PORSCHE's unfair business acts and practices as set forth in detail.

79.     PORSCHE's failure to properly identify all parts as high-priced warranted parts that should be identified as such, is a uniform, systematic, and intentional business practice on the part of PORSCHE to minimize the amount of money that PORSCHE has to pay out in warranty claims. This conduct violates California law.

80.     As a direct and proximate result of PORSCHE's acts and practices in violation of the UCL, Plaintiffs and members of the Class have paid out of

pocket to pay for repairs that should have been covered under the 7-year 70,000-mile California Emissions Warranty. Forcing consumers to pay out of pocket to repair or replace vehicle components that should be covered under warranty is clearly unfair.

81.     PORSCHE's conduct does not benefit consumers or competition. Plaintiffs and members of the Class could not reasonably avoid the injury each of them suffered or will suffer, which injury is substantial. PORSCHE's conduct only benefits PORSCHE, by PORSCHE wrongfully avoiding having to pay warranty claims which should be covered by the 7-year 70,000-mile California Emissions Warranty.

82.     The gravity of the consequences of PORSCHE's conduct as described above outweighs the justification, motive or reason therefor, is immoral, unethical and unscrupulous.

83.     PORSCHE's conduct also offends established public policy that is tethered to legislatively declared policies as set forth in the laws detailed above, including California laws and regulations regarding California's Emission Control System Warranty Requirements, or is substantially injurious to the public, for the reasons set forth above.

84.     To the extent that any definition of "unfair" requires a balancing test or weighing various factors, such an inquiry is fact intensive and requires a full factual record as to PORSCHE's justification and motives for its conduct, and as to the impact of PORSCHE's conduct on Plaintiffs and Class members.

85.     PORSCHE's acts of unfair competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief.  Plaintiffs also seek attorneys' fees and costs pursuant to, inter alia, C.C.P. § 1021.5. PORSCHE'S wrongful conduct has resulted in Plaintiffs and Class members having to pay thousands of dollars for repairs that should have been covered under the California Emissions Warranty.

The whole point of the CCR is to protect our environment from the continuing threat of excessive harmful toxic emissions. Plaintiffs and Class members suffer the threat of future harm that only an injunction can remedy because they will need to repair or replace coolant pumps in their Class Vehicles, moving forward. Furthermore, many consumers will not be able to pay the high cost necessary to perform these repairs, resulting in Class Vehicles producing increased emissions of greenhouse gases that will harm the environment. Without an injunction to compel PORSCHE to cover failed coolant pumps under the Emissions Warranty, money damages will be insufficient to remedy the harm to Plaintiffs and Class members created by damage to the environment from failed coolant pumps.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief and judgment against PORSCHE as follows:

1.      Plaintiffs, on behalf of themselves and members of the Class, requests that the Court enter judgment against PORSCHE as follows:

(a)      An order certifying the proposed Class designating Plaintiffs as named representatives of the Class, and designating the Plaintiffs' Counsel as Class Counsel;

(b)      A declaration that PORSCHE is financially responsible for notifying all Class members about the wrongful conduct set forth herein;

(c)      An order enjoining PORSCHE from further deceptive distribution, sales, and lease practices, and to reimburse both Plaintiffs and the Class for the money wrongfully paid by Plaintiffs and members of the Class relating to repairs which should have been covered by PORSCHE under the 7-year 70,000-mile California Emissions Warranty;

(d)      An award to Plaintiffs and members of the Class of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

(e)     An award to Plaintiffs and members of the Class of any repair costs they are owed;

(f)     A declaration that PORSCHE must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received as a result of the wrongful conduct set forth herein, or make full restitution to Plaintiffs and members of the Class;

(g)     An award of attorneys' fees and costs, as allowed by law;

(h)     An award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5;

(i)     An award of pre-judgment and post-judgment interest;

(j)     Leave to amend the Complaint to conform to the evidence produced at trial; and

(k)     Other relief as may be appropriate under the circumstances.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rules of Civil Procure, Rule 38(b), Plaintiffs hereby demand a trial by jury as to all claims so triable.

Dated: November 18, 2021                    Respectfully submitted,

**THE LAW OFFICE OF ROBERT STARR**

By:_____

/s/ Robert L. Starr
Attorney for Plaintiffs