**POMERANTZ LLP**
Jordan L. Lurie, State Bar No. 130013
jllurie@pomlaw.com
Ari Y. Basser, State Bar No. 272618
abasser@pomlaw.com
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 432-8492

**THE LAW OFFICE OF ROBERT L. STARR**
Robert L. Starr, State Bar No. 183052
robert@starrlaw.com
23901 Calabasas Road, Suite 2072
Calabasas, CA 91302

*Attorneys for Plaintiffs John Ferry, et al.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN FERRY and MOANA HANA FERRY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PORSCHE CARS NORTH AMERICA, INC, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:21-cv-05715-GW-AS<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT PORSCHE CARS NORTH AMERICA, INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. George H. Wu<br><br>Date:          March 7, 2022<br>Time:          8:30 a.m.<br>Courtroom:   D, 9th Floor<br><br>FAC Filed:   November 18, 2021 |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................**Error! Bookmark not defined.**

II.   LEGAL STANDARD ..................................**Error! Bookmark not defined.**

III.  PLAINTIFFS PLAUSIBLY ALLEGE PORSCHE'S LIABILITY FOR
FAILING TO WARRANT THE COOLANT PUMP
AS A HIGH-PRICED EMISSIONS WARRANTED PART .............. **Error!
Bookmark not defined.**

    A.   The Statutory Framework .................**Error! Bookmark not defined.**

    B.   Plaintiffs' Coolant Pump was Defective.......... **Error! Bookmark not
defined.**

    C.   The FAC Sufficiently Alleges that the Coolant Pump
is an Emissions-Related Part..............**Error! Bookmark not defined.**

    D.   The FAC Sufficiently Alleges that the Coolant
Pump is High-Priced ..........................**Error! Bookmark not defined.**

    E.   Porsche's Other Challenges Are Without Merit .....**Error! Bookmark
not defined.**

IV.   RULE 9(b) DOES NOT APPLY .................**Error! Bookmark not defined.**

V.    PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A CLAIM FOR
INJUNCTIVE RELIEF AT THE PLEADING STAGE...**Error! Bookmark
not defined.**

VI.   CONCLUSION ...........................................**Error! Bookmark not defined.**

1

## <u>TABLE OF AUTHORITIES</u>

2
**Page(s)**

3
**Cases**

4

5
*Andino v. Apple, Inc.*,
   2021 U.S. Dist. LEXIS 76011 (E.D. Cal. Apr. 20, 2021) .................................. 17

6

7
*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................... 3

8

9
*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................... 3

10
*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir. 1997) ............................................................................. 13

11

12
*Cory Hazdovac v. Mercedes Benz USA LLC*,
   2020 U.S. Dist. LEXIS 259675 (N.D. Cal. Sept. 16, 2020) ....................... *passim*

13

14
*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ....................................................................... 17, 18

15

16
*Gibson v. Jaguar Land Rover North America, LLC*,
   2020 WL 5492990 (C.D. Cal. Sept. 9, 2020) ................................................. 3, 8

17

18
*Haas v. Travelex Ins. Servs.*,
   2021 U.S. Dist. LEXIS 157178 (C.D. Cal. Aug. 19, 2021) ............................. 15

19

20
*In Re: Volkswagen Clean Diesel*,
   15-md-2672 (N.D. Cal.) ...................................................................................... 11

21

22
*Madani v. Volkswagen Grp. of Am., Inc.*,
   2019 U.S. Dist. LEXIS 133926 (N.D. Cal. Aug. 8, 2019) ............................. 15

23
*Moore v. Mars Petcare US, Inc.*,
   2020 U.S. App. LEXIS 23747 (9th Cir. 2020) ........................................... 13, 15

24

25
*Moore v. Mars Petcare US, Inc.*,
   966 F.3d 1007 (9th Cir. 2020) ............................................................. 13, 15, 16

26

27
*Mullins v. Premier Nutrition Corp.*,
   2016 U.S. Dist. LEXIS 79983 (C.D. Cal. June 20, 2016) ................................. 14

28

*Nacarino v. Chobani, LLC*,
    2021 U.S. Dist. LEXIS 149153 (N.D. Cal. Aug. 9, 2021) ........................... 16, 17

*Schepler v. Am. Honda Motor Co.*,
    2019 U.S. Dist. LEXIS 17775 (C.D. Cal. Jan. 29, 2019) ................................. 14

*Sonner v. Premier Nutrition Corp.*,
    962 F. 3d 1072 (9th Cir. 2020) ............................................................ 14, 15, 16

*Varela v. Walmart, Inc.*,
    2021 U.S. Dist. LEXIS 102661 (C.D. Cal. May 25, 2021) ................................ 3

*Velasco v. Chrysler Group LLC*,
    2014 U.S. Dist. LEXIS 117620 (C.D. Cal. Aug. 22, 2014) ........................ 11, 12

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ......................................................................... 13

*Zeiger v. Wellpet LLC*,
    526 F. Supp. 3d 652 (N.D. Cal. 2021) ............................................................. 16

**Statutes**

CLRA ............................................................................................................*passim*

Consumers Legal Remedies Act ..................................................................... 2

Magnusson-Moss Act ..................................................................................... 12

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................ 12, 13

**Other Authorities**

13 C.C.R. §§2035–2037 ......................................................................... 4, 5, 8

13 CFR §2037(b)(3) ................................................................................ 4, 6, 7

## I.    INTRODUCTION

This litigation seeks to redress a widespread, but little known, abuse in the automotive industry, namely, that auto manufacturers are providing deficient warranty coverage under California Emissions Warranty law (codified at Cal. Code Regs. ("CCR" or "Regulations"), Tit. 13, §§2035 and 2037).  The California Emissions Warranty requires car manufacturers to identify and warrant all "emissions-related parts" for 3 years/50,000 miles.  If the emissions-related part is also a "high-priced" warranted part, as determined based on a cost calculation set forth in the Regulations, the warranty is extended to 7 years/70,000 miles.  CCR §2035(2)(b) defines a "warranted part" as any part "which affects regulated emissions from a motor vehicle which is subject to California or federal emissions standards."

Manufacturers, including Defendant Porsche Cars North America, Inc. ("Porsche" or "Defendant"), fail to identify all of the vehicle parts that should properly be classified as "emissions parts" and "high-priced warranted parts" and covered for extended warranty periods as required by the California Emissions Warranty.  Instead, manufacturers omit these parts from their lists of "emissions parts" and "high-priced warranted parts" in their warranty books in order to reduce the money that car companies have to pay out in warranty claims.

Plaintiff's First Amended Complaint ("FAC") sufficiently alleges that Porsche failed to identify the coolant pumps installed in Model Year 2011 through 2018 Porsche Cayenne hybrid vehicles and 2012 through 2016 Porsche Panamera hybrid vehicles ("Class Vehicles") as "high-cost emissions warranted parts" that should have been covered under the California Emissions Warranty for 7-years or 70,000 miles.

The FAC alleges, in exacting detail, why and how the coolant pump in the Class Vehicles is "emission-related" and, therefore, covered under the California Emissions Warranty.  The FAC also identifies the applicable cost limit for the

1

high-priced cost calculation under the Regulations and demonstrates that the replacement cost for a coolant pump at the time of certification exceeds the cost threshold in each model year, and therefore, that the part should have been classified as a high-cost emissions warranted part.

Plaintiffs are not asserting breach of warranty or claims based on misrepresentations, because the coolant pump in the Class Vehicles was never included in Porsche's emissions warranty in the first place, which is exactly the problem.  This is an omissions case.   Porsche should have classified the coolant pump in Class Vehicles as a high-priced warranted part and identified it in the warranty books for the Class vehicles.  Porsche failed to do so in violation of California Emission Warranty law.

The FAC also refutes possible alternative explanations by Porsche for why the part was not classified as a high-priced warranted part and thwarts Porsche's attempt to hide behind the California Air Resources Board ("CARB").  As the FAC alleges, Porsche alone is solely responsible for selecting and identifying to CARB all of the parts that should be classified as high-priced emissions warranted parts, and Porsche failed to include the coolant pump in the Class Vehicles as part of its application for vehicle certification.

These allegations are more than sufficient at the pleading stage to plausibly support the claim that the part should have been classified as a high-priced warranted part and covered for 7-years or 70,000 miles and was not. Porsche's failure to comply with the California Emissions Warranty violates the "unlawful" prong of UCL and the "unfair" prong in that it offends established public policy with respect to controlling vehicle emissions in California. (Plaintiffs are not alleging a violation of the deceptive prong of the UCL and are not alleging a CLRA claim at all.) [1]  As a result of Porsche's misconduct,

---

[1] While the caption page of the FAC identifies a claim for violation of the Consumers Legal Remedies Act ("CLRA"), the FAC does not contain a cause of action for violation of the CLRA, and Plaintiffs are not asserting a CLRA claim.

1  Plaintiffs and members of the Class had to pay out of pocket for repairs for the
2  subject parts.

3      Both Judge Seeborg and Judge Carney have upheld nearly identical claims
4  by plaintiffs in denying motions to dismiss claims regarding high-priced emissions
5  parts. *See Cory Hazdovac v. Mercedes Benz USA LLC*, 2020 U.S. Dist. LEXIS
6  259675), at **11-14 (N.D. Cal. Sept. 16, 2020); *also see* G*ibson v. Jaguar Land
7  Rover North America, LLC* ("Gibson"), 2020 WL 5492990, at *6 (C.D. Cal. Sept.
8  9, 2020).

9      Plaintiffs' FAC should be sustained.

10 **II.    LEGAL STANDARD**

11     In ruling on a motion to dismiss, the court shall assume all well-pled facts to
12 be true and draw all reasonable inferences in favor of the non-moving party.
13 *Varela v. Walmart, Inc*., 2021 U.S. Dist. LEXIS 102661, at *8 (C.D. Cal. May 25,
14 2021) citing *Gompper v. VISX, Inc*., 298 F.3d 893, 896 (9th Cir. 2002). A
15 complaint need only allege sufficient facts to show "a claim to relief that is
16 plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
17 Assessing plausibility does not involve analysis of the merits. *Id*. at 556-57. A
18 claim has facial plausibility when the plaintiff pleads factual content that allows
19 the court to draw the reasonable inference that the defendant is liable for the
20 misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the
21 Court does not accept legal conclusions as true, it should not "engage in a
22 hypertechnical reading of the complaint inconsistent with the generous notice
23 pleading standard." *Doe v. Holy See*, 557 F.3d 1066, 1081 (9th Cir. 2009).
24 ///
25 ///
26 ///
27 ///
28

### III.   PLAINTIFFS PLAUSIBLY ALLEGE PORSCHE'S LIABILITY FOR FAILING TO WARRANT THE COOLANT PUMP AS A HIGH-PRICED EMISSIONS WARRANTED PART

#### A.   The Statutory Framework

The California Emissions Warranty was enacted by the State of California to restrict the output of harmful greenhouse gas emissions from gasoline and hybrid gasoline engines.  The fundamental purpose of the emissions requirements is to reduce emissions, limit fuel consumption and increase fuel efficiency, by forcing manufacturers to repair and/or replace failed emissions-related vehicle components under warranty, thereby decreasing greenhouse gas emissions, including carbon dioxide emissions.

California Air Resources Board ("CARB") regulations ensure compliance with California's automotive emission standards. The Regulations clearly define the methodology that car manufacturers, such as Porsche, are required to use in order to identify which parts should be covered by the 7-year/70,000-mile warranty. These Regulations dictate, among other things, the scope of warranties that manufacturers must provide for parts in new cars. *See generally* 13 C.C.R. §§2035–2037.

As explained in the FAC, for "high-priced" parts that affect regulated emissions ("high-priced warranted parts"), vehicle manufacturers must provide a 7-year/70,000-mile warranty as required by 13 CFR §2037(b)(3).  A warranted part is "high priced" if its replacement cost exceeds a "cost limit" defined by a formula that considers the model year and the Consumer Price Index ("CPI"). 13 C.C.R. §2037(c)(3). A part's replacement cost is defined as "the retail cost to a vehicle owner"—including the part, labor, and diagnosis—in "the highest-cost metropolitan area of California" at the time the model is certified by CARB. *See id.* §§2037(c)(4),(6). Pursuant to 13 C.C.R. §2037(c)(1)(B), manufacturers must identify all high-priced warranted parts in their applications to certify new vehicle models.  ¶¶10-12, 72.

### B. Plaintiffs' Coolant Pump was Defective

The FAC alleges that at 66,386 miles, within the 7-year/70,000-mile time limitation set by the California Emissions Warranty, Plaintiffs initially paid Rusnak Westlake Porsche ("Rusnak") $1,179.78 to replace a failed coolant pump in their Vehicle. ¶¶43-44. [2]

The Vehicle needed to be brought back to Rusnak at 66,762 miles for further repairs relating to the thermal management system. As a result of the failures of the thermal management system, the Vehicle's engine underwent extensive repair work. Although some of the repairs were covered under goodwill, Plaintiffs had to pay $10,894.22 for the repairs at 66,762 miles. These repairs were needed as a direct result of the failure of the thermal management system. The repair records at 66,762 miles indicated that an engine coolant crossover pipe had failed, however it is unclear from the records at 66,762 miles if the extensive engine repairs were needed due to the failed coolant crossover pipe or due to the failed coolant pump. *Id.* Plaintiffs allege that the coolant pump in Class Vehicles was a high-priced warranted part, even though it was not identified as such by Porsche in the warranty books for the Class Vehicles, and that the repair should have been covered under California Emissions Warranty. ¶62. Furthermore, the entire premise of Plaintiffs' FAC is that the defect giving rise to this litigation is

_____

[2] As Plaintiffs have sufficiently alleged that the Vehicle was presented for repair *prior to the end of* the 7-year 70,000-mile California Emissions Warranty period (¶37), the date that Plaintiff purchased the Vehicle and the date of the repair are not necessary in order for Plaintiff to satisfy the pleading requirements. Absent evidence proffered by Defendant to the contrary, Plaintiff is entitled to an inference at the pleading stage that warranty presentment was timely. Moreover, to the extent that Porsche contends that Plaintiff's claims may be time-barred (Motion at 8, fn. 2), Plaintiff has sufficiently alleged tolling based on the discovery rule. ¶¶61-64. Despite acting diligently, Plaintiffs and the Class cannot be reasonably expected on their own to learn or discover what parts and repairs should be identified as high-priced and covered under the 7-year 70,000-mile California Emissions Warranty.

PLAINTIFFS' OPPOSITION TO DEFENDANT PORSCHE CARS NORTH AMERICA, INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

the type of defect covered by 13 CFR §2037(b)(3) (i.e., a defect in materials and workmanship). Thus, contrary to Defendant's contention, these allegations are more than sufficient to plead when and why Plaintiffs sought repair, that the repair was performed within the 7-year/70,000-mile warranty period, and that the repair should have been covered under the California Emissions Warranty due to a defect in materials or workmanship. ¶44.

As demonstrated below, the defect in the coolant pump "affected regulated emissions," and the coolant pump is an emission-related part entitled to warranty coverage under the California Emissions Warranty.  Further, as adequately alleged in the FAC and demonstrated below, the coolant pump is also a high-priced warranted part.  At the time of initial distribution of the Class vehicles, the costs associated with diagnosing this part as being defective, purchasing the part, and installing the part, qualified the part as a "high-priced emissions part," entitled to extended warranty coverage for 7 years/70,000 miles.  While the information regarding why the parts were not identified by Porsche as high-priced emissions warranted parts is in the exclusive possession of Porsche, Plaintiffs have set forth sufficient facts to plausibly allege that the coolant pumps in the Class vehicles should have been classified as high-priced emissions warranted parts and covered under the California Emissions Warranty.

**C.    The FAC Sufficiently Alleges that the Coolant Pump is an Emissions-Related Part**

Plaintiffs have alleged detailed facts showing why the coolant pump is an emissions part entitled to coverage under the express terms of the CCR. Specifically, a defect in the coolant pump *directly increases* emissions regulated by the State of California, including greenhouse gases harmful to the environment. ¶46. The FAC alleges that: the coolant pump is part of the Vehicle's thermal management system, it facilitates circulating coolant throughout the engine, which heats up the coolant, and the coolant is circulated to the transmission, resulting in

faster heating of the transmission to operating temperature; the purpose of heating the transmission to operating temperature as fast as possible is to minimize friction loss; friction loss is an engineering term which relates to the amount of energy that is expended as the result of friction; minimizing friction loss reduces emissions; the Vehicle is designed with a thermal management system, and coolant pump, which reduces friction loss; and, when the coolant pump is not working properly, leaking coolant, and not pumping coolant at the proper pressure, greenhouse gas emissions are increased. *Id.*

Further, the FAC alleges that the Vehicle's coolant pump is so sophisticated that its functionality is controlled by vacuum, and by a circular fixture which when activated, encases the coolant impeller. The purpose of encasing the coolant pump impeller is to reduce or increase the flow of coolant throughout the engine based upon the engine's overall thermal management system and emissions strategies. The circular fixture works much like a thermostat, to regulate the circulation of coolant throughout the engine.  Therefore, the coolant pump installed in the Vehicle is an integral part of emissions control in the Vehicle. ¶47.

This factual detail is more than sufficient at the pleading stage to demonstrate that a failed coolant pump affects regulated emissions under the Regulations.

While Porsche may disagree about whether a defective coolant pump "affects regulated emissions," or is "too attenuated," or demonstrates the presence of an emissions-related defect, these are all disputed issues of fact.  At least at the pleading stage, these detailed allegations are sufficient to plead that the coolant pump is an emissions-related part entitled to extended coverage under the California Emissions Warranty.[3]  Indeed, in *Hazdovac, supra*, Judge Seeborg

---

[3] If necessary, Plaintiffs can also amend these allegations by referencing the specific emissions-related fault code that is triggered when the coolant pump is defective.  Car manufacturers, such as Porsche, are required to submit a list of emissions-related fault codes to CARB in order to certify the vehicles for sale in

1    determined that the issue of whether a part is actually an "emissions related part"

2    is not appropriately adjudicated on a motion to dismiss.  *Hazdovac*, *supra*, at *11.

3         **D.    The FAC Sufficiently Alleges that the Coolant Pump is High-
              Priced**

4

5         The FAC also sufficiently alleges that the coolant pump is a "high-priced

6    emissions warranted part."   A warranted part is "high priced" if its replacement

7    cost exceeds a "cost limit" defined by a formula that considers the model year and

8    the Consumer Price Index ("CPI"). *See* 13 C.C.R. §2037(c)(3). A part's

9    replacement cost is defined as "the retail cost to a vehicle owner"—including the

10   part, labor, and diagnosis—in "the highest-cost metropolitan area of California" at

11   the time CARB certifies the model. *See Id*. §§2037(c)(4), (6). ¶¶10-11.

12        The FAC performs the necessary calculations under the CCR.  The courts in

13   *Gibson* and *Hazdovac* ruled that substantially similar calculations based on repair

14   costs in prior years, labor rates, and conservative rates of inflation were sufficient

15   at the pleadings stage to allege a plausible claim.  *See* Gibson Order at 6; *also see*

16   *Hazdovac*, *supra*, at **8-9.

17        Plaintiffs allege that the cost of the repair of the coolant pump was, at a

18   minimum, $1,179.78. ¶¶44-45.   The FAC also alleges, in detail, the applicable

19   cost limit for the least expensive year of the Class Period (less than $600 in 2011)

20   based on California Air Resources Board Manufacturer's Advisory

21   Correspondence for the respective years. ¶45. Porsche does not appear to

22   challenge the cost limit alleged by Plaintiffs.

23        The FAC also sufficiently and plausibly alleges how the costs of parts and

24   labor to diagnose and repair a defective coolant pump at the time of certification

25   exceeded the costs limits in each year of the Class period by performing a

26

27   _____

     California. The fault code associated with a defect in the coolant pump further
28   confirms unequivocally that the defect in the coolant pump affects regulated
     emissions.  The fault codes will also further show how the coolant pump was
     defective.

8

straightforward analysis. The actual cost of the parts and labor for completing the coolant pump repair to Plaintiffs' Vehicle was at least $1,179.78. The FAC alleges that with regard to 2011 Model Year vehicles, the high-cost threshold is less than $600.00. ¶45. That means that if a repair costs $600.00 or more, including the cost of diagnosis, parts and labor, and if the part is covered under the California Emissions Warranty, then the repair is covered under the 7-year 70,000-mile high-priced warranty. Plaintiffs paid $1,179.78 for the repairs at 66,286, far in excess of $600.00. ¶45.

Furthermore, the FAC Alleges that Alldata, an aggregator of automotive repair costs, indicates that the coolant pump itself costs $463.49, and the labor to replace the part takes 3.8 hours. This does not include the cost to diagnose the defect, or the cost of supplies like coolant. Even taking into consideration an increase in the price of the part from 2011 to the present time, at a very conservative estimated labor rate of $125.00 per hour, the cost of the repair, when taking into consideration the cost of parts, labor and supplies, exceeds $600.00. ¶45. ($463.49 part cost + $475 ($125 x 3.8) labor cost = $938.49, not including cost to diagnose the repair).   A similar analysis would find that the cost of the repair exceeds the high-cost threshold for all Model Year Class Vehicles, as defined herein. Unless Porsche has engaged in price gouging relating to its parts, the parts component of parts and labor amounts certainly should have been no less than $600.00 in 2011, and only would have gone up thereafter. ¶58. Thus, Plaintiffs have provided a basis to allege that the coolant pump is a high-priced warranted part, independent of the amount actually paid by Plaintiffs to repair the Vehicle. This analysis is more than sufficient at the pleading stage.

In *Hazdovac v. Mercedes-Benz USA, LLC*, Judge Seeborg endorsed a similar replacement cost analysis in another high-priced emissions warranted part action. In denying defendant's motion to dismiss, the court noted:

[A]s regards the term "high-priced," the complaint attempts to

reverse engineer the Subject Parts' replacement costs at the time of the Class Vehicles' CARB certification (e.g., 2015 and 2016) using their replacement costs in the summer of 2019. This method is compelling. For each of her vehicle's three 2019 repair jobs, Hazdovac was billed well over $800 for diagnosis, parts, and labor. That each Subject Part in her model year 2015 sedan carried a 2019 replacement cost over 35% greater than CARB's 2015 "cost limit" would, to put it kindly, seem to imply a remarkable inflationary force at play. Nor does it appear this force impacted the entire emissions system, as CARB's benchmark "cost limit" figure has risen a mere 8% over roughly the same period. Hazdovac's assertion that the Subject Parts have been "high-priced" all along is, in this sense, eminently credible.

*Hazdovac*, *supra*, at *8.

Further, the *Hazdovac* court noted that while that plaintiff's complaint lacked some contemporaneous pricing data, "even so—and MBUSA's dogged emphasis on those figures' absence notwithstanding—perfect data is not required at the pleading stage." *Id*. at *9. The court added that "for now, however, the allegation that the Subject Parts' actual 2019 replacement costs (ranging, for Hazdovac, from $822.50 - $1,040.85) relative to their MBUSA-calculated 2015 replacement costs (presumably, sub-$590) cannot be reconciled by reference to ordinary market forces provides more-than-adequate support for the suggestion that, somewhere along the line, those costs may have been misstated." *Id*.

Finally, as the court noted in *Hazdovac*:

As another trial court in this circuit, addressing closely analogous claims, recently observed, although "[t]he Court may determine at summary judgment, or a jury may determine at trial, that . . . [the automobile manufacturer's] decision not to include [a given automobile part] as a high-priced warranted part did not violate the law," that possibility alone does not merit dismissal. *Gibson v. Jaguar Land Rover North America, LLC*, 2020 WL 5492990, at *3 (C.D. Cal. Sept. 9, 2020) (finding Jaguar's failure to provide 7-year/70,000-mile coverage for in-tank fuel pumps plausibly out of step with same CCR provisions implicated here). Because she has articulated Ford's purported misconduct with circumstantial

"particularity"—if not automotive or quantitative expertise—
Hazdovac may, for the time being, proceed on the theory that the
Subject Parts are "high-priced" and "emissions-related." See Fed. R.
Civ. P. 9(b).

*Hazdovac, supra,* at *11.

### E.    Porsche's Other Challenges Are Without Merit

Porsche contends that Plaintiffs have no claim because CARB never made
any determinations about the parts at issue.  Porsche conveniently misses the point
regarding Plaintiffs' CARB allegations.  Plaintiffs are not alleging that CARB is
responsible for MBUSA's conduct or "challenging CARB's determinations."
CARB only reviews the emissions parts list that Porsche actually submits to
CARB, and the parts were not on the list.  But, as Plaintiffs allege, the list is
incomplete. ¶22.

CARB did not (and could not) make any determination about the parts that
Porsche *did not* submit to it, and CARB is not responsible for the parts that
Defendant failed to identify.  Porsche alone, not CARB, is responsible for
selecting and identifying to CARB the parts that Porsche identified as "high-
priced emissions warranted parts" in its application for vehicle certification, and
Porsche failed to identify the coolant pump among those parts for the Class
vehicles.  Further, any dispute as to what CARB saw or should have seen cannot
properly be resolved on the pleadings.[4]

Plaintiffs' detailed allegations also distinguish this case from *Velasco v.*
*Chrysler Group LLC,* 2014 U.S. Dist. LEXIS 117620 (C.D. Cal. Aug. 22, 2014),
relied on by Defendant.  In that case, the court (without any detailed analysis) held
that the subject part only "indirectly affected emissions" because it affected or
controlled other parts which were designated emissions-related parts by CARB.

---

[4] Further, Porsche's suggestion that CARB is the only party capable of enforcing
compliance is belied by private litigation in multiple emissions scandals, including
*In Re: Volkswagen Clean Diesel*, 15-md-2672, and *Chrysler-Dodge-Jeep*
*EcoDiesel* MDL No. 2777.

The court specifically noted that it "was not presented with sufficient information" to conclude that the subject part was an emissions related part and that plaintiffs did not challenge defendant's characterization of the part.  *Id.* at *7.  Here, in contrast to *Velasco*, Plaintiffs have alleged detailed facts, described above, showing why the coolant pump is an emissions part entitled to coverage under the express terms of the CCR. There were no such showings in *Velasco*, where the court expressly noted the absence of any information upon which to determine whether the subject part was emissions related.[5]

Further, *Velasco* was decided in the context of a claim for breach of warranty under the Magnusson-Moss Act.  Here, Plaintiffs have not alleged a breach of warranty claim – and for good reason.  The issue here is not whether Porsche failed to cover a part that was properly identified under the California Emissions Warranty.  The issue is whether Porsche should have identified the part as being covered under the California Emissions Warranty in the first place.

## IV.   RULE 9(b) DOES NOT APPLY

Porsche contends that the FAC sounds in fraud and therefore Rule 9(b) pleading requirements apply. Motion at 6. Not so. Critically, the FAC does not allege a violation of the fraud/deceptive prong of the UCL.  While Plaintiffs allege a failure to disclose, that is the predicate to Plaintiffs' unlawful claim for violation of the California Emissions Warranty and explains how Porsche violated the warranty requirements.

Moreover, as the Ninth Circuit noted recently, "Rule 9(b) requirements may not even be necessary, given that a defendant can violate the UCL, FAL, and CLRA

_____

[5]Moreover, to the extent that Porsche contends, based on *Velasco*, that there is no authority from the CARB interpreting the statute in the manner Plaintiffs propose, Plaintiffs have obtained a Declaration from Allen Lyons, Chief of the Emissions Certification and Compliance Division of the California Air Resources Board (the "CARB Declaration").  The CARB Declaration *is* the interpretation from CARB and confirms Plaintiffs' understanding of the requirements of the California Emissions Warranty.  If necessary, Plaintiff can reference the CARB Declaration in an amended pleading.

by acting with mere negligence." *Moore v. Mars Petcare US, Inc*., 966 F.3d 1007 (9th Cir. 2020), at fn. 11 citing *Williams v. Gerber Products*, 552 F.3d at 934, 938 (9th Cir. 2008) (applying a "reasonable consumer" test to UCL, FAL, and CLRA claims). Thus, because fraud is not a required element of Plaintiffs' claims, Rule 9(b)'s heightened pleading standard does not apply.

Even if the Rule 9(b) requirements apply, which they do not, the FAC satisfies them. A complaint satisfies Rule 9(b) by "alleging the basic premise of 'what is false or misleading about a statement, and why it is false.'" *Moore, supra,* 966 F.3d 1007, at 1020 (internal citation omitted). Further, even in cases where fraud is alleged, pleading requirements are "relaxed" where the relevant facts are known only to the defendants." *Id*. at 22. To be in compliance with Rule 9(b), a plaintiff must simply plead the "who, what, when, where, and how" of the alleged misconduct. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

Here, Plaintiffs plead sufficient detail to put Porsche on notice of the claim. The FAC identifies the who (Porsche), what (failure to list the coolant pump as an emissions part and a high-priced warranted part in its warranty booklets for Model Year 2011 through 2018 Porsche Cayenne hybrid vehicles and 2012 through 2016 Porsche Panamera hybrid vehicles), when (during the Class period), where and how of the misconduct (omitted from warranty books), as well as what is false or misleading about the purportedly fraudulent conduct (failed to properly classify the coolant pump as an emission part and a high-priced warranted part based on information available to Porsche at the time). ¶¶37-38, 62, 77, 77.

Similarly, because Plaintiffs are not alleging fraud, Plaintiffs are not required to plead or prove Defendant's knowledge to prevail on their claims. Even under the UCL, Plaintiffs are not required to show intent to deceive for UCL claims. *See Moore, supra,* 2020 U.S. App. LEXIS 23747, at *19 (citing *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1144 (N.D. Cal. 2005) (rejecting arguments that

plaintiffs must show intent to deceive for UCL claims)).  Thus, Plaintiffs are not required to allege or prove that Defendant knew or should have known that the applicable replacement costs exceeded the costs limits.  Moreover, scienter is not required at all with respect to the unfair and unlawful prongs of the UCL.  *See Schepler v. Am. Honda Motor Co*., 2019 U.S. Dist. LEXIS 17775, at *18 (C.D. Cal. Jan. 29, 2019) citing *Lazebnik v. Apple, Inc*., No. 5:13-CV-04145-EJD, 2014 U.S. Dist. LEXIS 121408, at *7 (N.D. Cal. Aug. 29, 2014) (ruling that the UCL has no scienter requirement); *also see Mullins v. Premier Nutrition Corp.*, 2016 U.S. Dist. LEXIS 79983, at *17 (C.D. Cal. June 20, 2016) ("[t]he UCL does not impose a scienter requirement") (citing *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 181, (2000) ("[A] plaintiff need not show that a UCL defendant intended to injure anyone through its unfair or unlawful conduct.").

## V.    PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A CLAIM FOR INJUNCTIVE RELIEF AT THE PLEADING STAGE

It is well-settled law that the remedies under the UCL are cumulative and that a plaintiff can seek both restitution and injunctive relief.  Indeed, injunctive relief is the primary remedy offered by the UCL, and restitution (specifically, the return of money taken from the plaintiff as a result of the unlawful conduct) is the only monetary remedy available to plaintiffs in private actions.  Damages are not recoverable.  Therefore, since Plaintiffs do not even assert a CLRA claim for damages, Porsche's argument, based on *Sonner v. Premier Nutrition Corp.*, 962 F. 3d 1072 (9th Cir. 2020) that damages can make Plaintiffs "whole" and are an adequate remedy at law is irrelevant.  Plaintiffs cannot be "made whole" by damages that they cannot and do not seek.[6]

Moreover, even if Plaintiffs were to assert a claim for equitable relief along with a "damages" claim, they still may do so at the pleading stage, in the

---

[6] The FAC's reference to "damages" refers to restitution, the only monetary remedy provided by the UCL.

14

alternative. In *Moore v. Mars Petcare US, Inc.*, 2020 U.S. App. LEXIS 23747 (9th Cir. 2020), the Ninth Circuit wrote that "Defendants' argument that Plaintiffs cannot seek equitable relief under the UCL or FAL, given an adequate legal remedy under the CLRA, is foreclosed by statute. The UCL, FAL and CLRA explicitly provide that remedies under each act are cumulative to each other." *Moore,* 2020 U.S. App. LEXIS 23747, at n. 13. Thus, *Moore* expressly confirms that plaintiffs can pursue equitable claims under the UCL in the alternative to legal claims at the pleading stage. *See also Madani v. Volkswagen Grp. of Am., Inc.*, 2019 U.S. Dist. LEXIS 133926, at *27 (N.D. Cal. Aug. 8, 2019) (Judge Gilliam reconsidered his prior position and was ultimately persuaded, based on the statutory language of Business & Professions Code section 17205 that, "at the pleading stage, theories of equitable remedies are not barred by a plaintiff adequately pleading theories supporting monetary relief.")

Recently, in *Haas v. Travelex Ins. Servs.*, 2021 U.S. Dist. LEXIS 157178 (C.D. Cal. Aug. 19, 2021), in analyzing *Sonner*, Judge Wright issued a ruling that is also consistent with Plaintiffs' position here:

> [T]he Court is unpersuaded that *Sonner* compels dismissal of this equitable claim at the pleading stage. *Sonner* had a unique procedural posture; the plaintiff had dismissed her state law damages claim on the proverbial eve of trial to force her $32,000,000 class action claim to trial by bench rather than by jury. *Id.* at 837. The case cannot be read as reversing a clearly established circuit practice allowing plaintiffs to plead in the alternative at the earliest stages of litigation. *See Cabrales v. Castle & Cooke Mortg., LLC*, No. 1:14-cv-01138-MCE-JLT, 2015 WL 3731552, at *4 (E.D. Cal. June 12, 2015) ("[A] litigant is entitled to assert inconsistent theories of recovery on both legal and equitable grounds at the pleadings stage."). Indeed, "[t]his Court is aware of no basis in California or federal law for prohibiting the plaintiff[] from pursuing [her] equitable claims in the alternative to legal remedies at the pleadings stage."

*Haas v. Travelex Ins. Services.*, 2021 U.S. Dist. LEXIS 15717, at *18.

1    Therefore, *Sonner* does not constitute controlling authority prohibiting a

2    federal court plaintiff from *pleading* alternative remedies, and Plaintiffs should not

3    have to choose their claim or remedy at the pleading stage.  Indeed, *Moore*

4    expressly confirms that Plaintiffs *can* plead in the alternative and that the holding in

5    *Sonner* does not apply to the pleading stage.  In any event, Plaintiffs are seeking

6    restitution, not damages, under the UCL and are not asserting a CLRA claim for

7    damages. Therefore, Defendant's argument that damages (which are only provided

8    under the CLRA) provide an adequate remedy at law is unavailing.

9    Further, even if it might be proper to dismiss *some* kinds of equitable claims

10   in cases where a plaintiff also seeks damages, there is no automatic presumption

11   that the existence of legal remedies necessarily bars *all* equitable relief.  Indeed,

12   Plaintiffs are entitled to plead a request for *prospective* injunctive relief, which is

13   not foreclosed by a damages claim.  Numerous courts have rightfully noted that,

14   "retrospective damages are not an adequate remedy for the prospective harm that

15   injunctions are designed to prevent," and that "*Sonner* does not bar consumer fraud

16   claims that seek injunctive relief where the plaintiff, as here, alleges future harms."

17   *Nacarino v. Chobani, LLC*, 2021 U.S. Dist. LEXIS 149153, at *35 (N.D. Cal. Aug.

18   9, 2021).  *See also Zeiger v. Wellpet LLC*, 526 F. Supp. 3d 652, 686 (N.D. Cal.

19   2021) ("monetary damages for past harm are an inadequate remedy for the future

20   harm that an injunction under California consumer protection law is aimed at.").

21   As the *Zeiger* court explained, "[Plaintiff] Zeiger's remedy at law, damages, is

22   retrospective.  An injunction is prospective.  Damages would compensate Zeiger for

23   his past purchases. An injunction would ensure that he (and other consumers) can

24   rely on WellPet's representations in the future." *Id*. (citing *McGill v. Citibank, N.A.*,

25   2 Cal. 5th 945, 955 (2017) (explaining that UCL, CLRA, and FAL injunctive relief

26   is designed to prevent future harm).  The *Zeiger* court also noted that "California's

27   consumer protection laws permit courts to issue injunctions that serve different

28   purposes and remedy different harms than retrospective damages." *Id*. at 687.  *See*

16

*also Andino v. Apple, Inc*., 2021 U.S. Dist. LEXIS 76011, at \*5 (E.D. Cal. Apr. 20, 2021) (holding that "[m]oney damages are an inadequate remedy for future harm, as they will not prevent Defendant from continuing the allegedly deceptive practice"). Therefore, because the injunctive relief that Plaintiffs request is prospective and any other remedy would be retrospective, their claim for an injunction under the UCL is not barred. Simply put, retrospective damages are not an adequate remedy for the prospective harm that injunctions are designed to prevent.

Plaintiffs also have standing to seek injunctive relief.  In conducting a standing inquiry, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in her favor without reaching the merits of her claim. *See e.g*., *Nacarino, supra,* 2021 U.S. Dist. LEXIS 149153, at \*30.   Plaintiffs have sufficiently alleged that they will need to repair or replace coolant pumps in their own Class Vehicle, moving forward (¶85), which alone is sufficient to establish a "real and immediate threat of repeated injury" necessary to seek injunctive relief. Defendant's challenges to Plaintiffs' standing for injunctive relief are defeated by Plaintiffs' well pled allegations of continuing and future harm, which are sufficient under *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) (upholding injunctive relief because a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase).

Further, as the FAC explains, the threat of repeat injury is real and necessary due to Porsche's systematic business practice of intentionally failing to identify coolant pumps and other emissions-related parts as high-priced warranted parts in Class Vehicles, and, in so doing, denying the 7-year/70,000-mile coverage required under the California Emissions Warranty.  This is a practice that will continue absent an injunction and that will affect every emissions part in Plaintiffs' Vehicle that is improperly and illegally omitted from warranty coverage under the

California Emissions Warranty.  Plaintiffs have sufficiently alleged that Class members are continuing to be misled and that Porsche's conduct presents "a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief," (¶¶ 74, 85) and seeks an  "an order enjoining Porsche from further deceptive distribution, sales, and lease practices," (Prayer at ¶(c)), which includes curing the omission in Porsche's warranty books on a going forward basis by correctly classifying the all emissions parts in Class Vehicles. Furthermore, the FAC explains that many consumers will not be able to pay the high cost necessary to perform these repairs, resulting in Class Vehicles producing increased emissions of greenhouse gases that will harm the environment. *Id*. The FAC further alleges that without an injunction to compel Porsche to cover failed coolant pumps under the Emissions Warranty, money damages will be insufficient to remedy the harm to Plaintiffs and Class members created by damage to the environment from failed coolant pumps. *Id*. These allegations are sufficient to establish a threat of imminent future harm that is appropriately remedied by an injunction.

Finally, Porsche's argument that authorizing a request for injunctive relief "would insert the Court into a California regulatory agency's processes and enforcement processes" is a red herring. Motion at 14.  Plaintiffs' request for injunctive relief only seeks to compel Porsche to follow the preexisting California Emissions Warranty laws, as written by CARB. Compelling Porsche to do so would neither require this Court to "disrupt" CARB's normal course of proceeding, nor place any burden on this Court to monitor and enforce CARB's emissions regulations.[7]

---

[7] The CARB Declaration referenced above (fn. 5), further repudiates Porsche's argument.  CARB is well aware of private actions taken to enforce the California Emissions Warranty and has provided the CARB Declaration "for the sole purpose of educating the Court about CARB's interpretation and implementation of California's warranty requirements."

Accordingly, Plaintiffs are entitled to seek injunctive relief at this stage of the litigation.

## VI.   CONCLUSION

For the foregoing reasons, Porsche's Motion should be denied in its entirety or Plaintiffs respectfully request leave to amend.

Dated: January 25, 2022               Respectfully submitted,

**POMERANTZ LLP**
**THE LAW OFFICE OF ROBERT STARR**

By: _____/s/ Ari Y. Basser_____
                    Jordan L. Lurie
                    Ari Y. Basser
                    Robert L. Starr

*Attorneys for Plaintiffs*

PLAINTIFFS' OPPOSITION TO DEFENDANT PORSCHE CARS NORTH AMERICA, INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT