1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**POMERANTZ LLP**
Jordan L. Lurie, State Bar No. 130013
jllurie@pomlaw.com
Ari Y. Basser, State Bar No. 272618
abasser@pomlaw.com
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 432-8492

**THE LAW OFFICE OF ROBERT L. STARR**
Robert L. Starr, State Bar No. 183052
robert@starrlaw.com
Theodore Tang, State Bar No. 313294
theodore@starrlaw.com
23901 Calabasas Road, Suite 2072
Calabasas, CA 91302

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN FERRY and MOANA HANA FERRY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PORSCHE CARS NORTH AMERICA, INC., and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:21-cv-05715-GW (ASx)<br><br>Assigned to: Hon. George H. Wu<br><br>**CLASS ACTION**<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>**(1) VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE, SECTION 17200,** *et seq.*<br><br>**(2) VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE SECTION 1770,** *et seq.*<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs John Ferry and Moana Hana Ferry ("Plaintiffs"), individually and on behalf of all other members of the public similarly situated, bring this action against Defendant Porsche Cars North America, Inc., ("Defendant" or "PORSCHE"), upon information and belief, except as to their own actions, the investigation of their counsel, and facts that are a matter of public record. The term "Vehicle" shall refer to the 2011 Porsche Cayenne vehicle purchased and owned by Plaintiffs, VIN # WP1AE2A25BLA93177. The Vehicle was originally placed into service as a new vehicle on March 4, 2011, with 18 miles on the odometer. Plaintiffs allege as follows:

## INTRODUCTION

1.      This class action arises out of PORSCHE's failure to accurately and comprehensively identify the vehicle parts that should properly be classified as "high-cost emissions warranty parts" under California's emission control system warranty requirements which required coverage under the emissions warranty for 7-years and 70,000 miles. Because the Vehicle was originally placed into service as a new vehicle on March 4, 2011, at 18 miles, the 7-year and 70,000 miles California emissions warranty would not expire until March 4, 2018, or 70,018 miles, which ever occurred first. The warranty is also extended by operation of law for any days that the Vehicle was out of service for warranty related repairs.

2.      In order to minimize PORSCHE's warranty exposure, PORSCHE has unilaterally limited the parts that should be covered under the emissions warranty for 7-years and 70,000 miles, including the parts specifically identified by Plaintiffs below.

3.      By not comprehensively identifying the parts that should be included as "high-cost" warranty parts, PORSCHE is able to limit the warranty coverage for those parts to only 4-years and 50,000 miles.

4.      By this action, Plaintiffs seek reimbursement for, *inter alia*, all out of pocket costs paid for repairs that should have been covered under the 7-years and 70,000-mile emissions warranty, as well as an injunction compelling PORSCHE to properly identify parts as high-priced warranty parts.

///

**BACKGROUND**

5. For decades, PORSCHE has been in the business of importing and distributing PORSCHE vehicles in the State of California, with the intent to sell PORSCHE vehicles to consumers in California. Consequently, the PORSCHE vehicles have been subject to state and federal regulations relating to (1) emissions standards; and (2) PORSCHE's obligation to provide consumers with warranties relating to emissions parts.

6. Title 13, Section 2035, *et seq*. of the California Code of Regulations, is entitled "Emission Control System Warranty Requirements for 1990 and Subsequent Model Year Passenger Car, Light-Trucks, and Medium-Duty Vehicles and Engines" ("the CCR").

7. Dating back over 20 years, the CCR has required PORSCHE, on an annual basis, to truthfully disclose to the California Air Resources Board ("CARB"), all vehicle parts that are "high-priced" "warranted parts." The CCR further requires PORSCHE to provide a 7-year, 70,000-mile warranty to California consumers relating to all "high-priced" "warranted parts." This provision is sometimes referred to as the "High-Cost Emissions-Related Parts Warranty" or the "California Emission Control System Warranty."

8. The CCR very clearly defines the methodology that PORSCHE is required to use in order to identify which parts should be covered as emissions parts. Furthermore, the CCR very clearly defines the methodology that PORSCHE is required to use in order to identify which parts should be covered by the 7-year 70,000-mile warranty.

9. Pursuant CCR Section 2035—which applied to 1990 and subsequent model year vehicles—a "warranted part" is defined as, "any part installed on a motor vehicle or motor vehicle engine by the vehicle or engine manufacturer, or installed in a warranty repair, which affects any regulated emission from a motor vehicle or engine which is subject to California emission standards."

10. Furthermore, 13 CCR Section 2037(b) states: "The manufacturer of each motor vehicle or motor vehicle engine shall warrant to the ultimate purchaser and each subsequent purchaser that the vehicle or engine is:

///

(1)     Designed, built, and equipped so as to conform with all applicable regulations adopted by the Air Resources Board pursuant to its authority in chapters 1 and 2, part 5, division 26 of the Health and Safety Code; and

(2)     Free from defects in materials and workmanship which cause the failure of a warranted part to be identical in all material respects to the part as described in the vehicle or engine manufacturer's application for certification, including any defect in materials or workmanship which would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate, for a period of three years or 50,000 miles, whichever first occurs; and

(3)     Free from defects in materials and workmanship which cause the failure of a warranted part described in section (c) below for seven years or 70,000 miles, whichever first occurs."

11.     California Code of Regulations Section 2037(c) deals with "high-priced warranted parts" under the California Emission Control System Warranty and states:

(1)     Each manufacturer shall identify in its application for certification the "high-priced" warranted parts which are:

    (a)     For 1990 through 2007 model year vehicles: [i] included on the Board's "Emissions Warranty Parts List" as last amended February 22, 1985, incorporated herein by reference, and; [ii] have an individual replacement cost at the time of certification exceeding the cost limit defined in section (c)(3);

    (b)     For 2008 and subsequent model year vehicles: [i] subject to coverage as a warranted part in section (b)(2) above, and; [ii] have an individual replacement cost at the time of certification exceeding the cost limit defined in section (c)(3).

(2)     The replacement cost shall be the retail cost to a vehicle owner and include the cost of the part, labor, and standard diagnosis. The costs shall be those of the highest-cost metropolitan area of California.

(3)     The cost limit shall be calculated using the following equation:

Cost limit $\{n\}$ = \$300 x (CPI$\{n-2\}$)/ 118.3)

Cost limit $\{n\}$ is the cost limit for the applicable model year of the vehicle rounded to the nearest ten dollars.

12.     In summary, any part that either effects a vehicle's emissions, or causes a vehicle's on-board diagnostic malfunction indicator light to illuminate is, for the purpose of determining coverage under CCR, considered a "warranted part." If a part is a "warranted part," the part shall have a 3-year 50,000-mile warranty.

13.     However, if the part is a "high-priced" warranted part, as defined by 2037(c) of the CCR, the part, the labor cost of diagnosing the part failure, and the labor cost of replacing the part shall have a 7-year, 70,000-mile emissions warranty pursuant to the High-Cost Emissions-Related Parts Warranty.

**PORSCHE'S CONDUCT**

14.     At all times herein relevant, for each new motor vehicle intended to be distributed by PORSCHE in the State of California, at the time of distribution, PORSCHE has purported to accurately and truthfully notify CARB of all the parts which should be covered as emissions related parts, also known as warranted parts.

15.     Furthermore, at all times herein relevant, for each new motor vehicle intended to be distributed by PORSCHE in the State of California, at the time of distribution, PORSCHE has purported to accurately notify CARB of the parts which should be covered under the 7-year 70,000-mile California emissions warranty.

16.     At all times herein relevant, for each new vehicle intended to be distributed by PORSCHE in the State of California, at the time of distribution, PORSCHE has purported to provide accurate written warranty documents with the vehicle, which purport to accurately identify all of the vehicle parts that are covered under the 3-year, 50,000- mile California emissions warranty, as well as the 7-year, 70,000-mile California emissions warranty.

17.     PORSCHE has engaged in a systematic business practice of omitting from the PORSCHE warranty booklet provided to owners and lessees at the time of sale or lease, and in

resources provided by PORSCHE to its dealerships both at the time of sale or lease and afterwards, all of the parts that should be identified as emissions related warranty parts covered under the 3-year 50,000-mile warranty, and the "high-priced" warranted parts and that should be covered under the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty.

18.     Interestingly, PORSCHE classifies *some* of the parts as being covered by the 3-year 50,000-mile California emissions warranty, and *some* of the "high-priced" warranted parts as being parts covered under the 7-year 70,000-mile California emissions warranty. In other words, PORCHE purposely fails to disclose all of the parts which parts should be covered under either the 3-year 50,000-mile California emissions warranty, or the 7-year 70,000-mile California emissions warranty.

19.     Thereafter, when PORSCHE vehicles are presented by consumers to PORSCHE authorized repair facilities for repair, PORSCHE fails to provide coverage under the 3-year 50,000-mile California emissions warranty or the 7-year 70,000-mile California emissions warranty for repairs which should have rightly been covered under said emissions warranties.

20.     As a result, California consumers have to pay out of pocket for these repairs which, by operation of California law, should be paid for by PORSCHE.

21.     PORSCHE engages in the alleged misconduct in order to reduce the amount of money that PORSCHE has to pay out on warranty-related repairs and warranty claims.

22.     If PORSCHE properly identified all of the warranted parts and high-priced warranted parts that should be correctly identified as such, then PORSCHE dealerships would properly provide coverage for said high-priced parts under warranty.

23.     The failure by PORSCHE to properly identify parts as warranted parts and "high-priced" warranted parts under the CCR violates California Business and Professions Code section 17200, *et seq.* (the "UCL"); the California Consumers Legal Remedies Act, Cal. Civ. Code Section 1750, *et seq.* (the "CLRA"); and is intended to minimize the amount of money that PORSCHE has to pay out in warranty claims.

24.     Plaintiffs and other consumers have suffered damage and lost money or property as a result of PORSCHE's wrongful conduct.

1    25.    Plaintiffs' theory does not depend on the premise that CARB was deceived by

2    the information that PORSCHE submitted, and Plaintiffs are not accusing CARB of

3    mismanagement or blaming CARB for PORSCHE's inaccuracy. PORSCHE alone is

4    responsible for selecting and identifying to CARB the parts that PORSCHE has unilaterally

5    identified as warranted parts and "high-cost emissions warranty parts" as part of its application

6    for vehicle certification. That list may be correct as far as PORCHE is concerned, or as far as

7    CARB may know, but as Plaintiff alleges, the list is incomplete as evidenced by Plaintiffs' own

8    experience.

9                          **JURISDICTION AND VENUE**

10    26.    This Court has original jurisdiction over the subject matter of this action

11    pursuant to 28 U.S.C. § 1332(d)(2)(A) because: (i) members of the Class are citizens of a state

12    different from that of PORSCHE; and (ii) aggregating the claims of individual Class

13    members, the total matter in controversy exceeds the sum or value of $5,000,000, exclusive of

14    interests and costs. Further, 28 U.S.C. § 1332(d)(5) does not apply because (i) PORSCHE is

15    not a state, state official, or other governmental entity against whom the Court may be

16    foreclosed from ordering relief, and (ii) the number of members of the Class in the aggregate

17    exceeds 100.

18    27.    This Court has personal jurisdiction over PORSCHE because PORSCHE has

19    sufficient minimum contacts with California, having intentionally availed itself of the

20    California market so as to render the exercise of jurisdiction over it by this District Court

21    consistent with traditional notions of fair play and substantial justice.

22    28.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 because PORSCHE

23    conducts business within the State of California, has failed to designate with the office of the

24    California Secretary of State a principal place of business in California, and a substantial part

25    of the events giving rise to the claims alleged herein occurred in this District.

26    29.    All of the wrongful acts complained of by Plaintiffs occurred in the state of

27    California, county of Los Angeles.

28    ///

**PARTIES**

30.     Plaintiff John Ferry ("John") is an individual.

31.     Plaintiff Moana Hana Ferry ("Moana") is an individual.

32.     PORSCHE was and is, upon information and belief, a California corporation, doing business in California.

33.     The true names and capacities of Defendants sued in this Complaint as Does 1 through 10, inclusive, are currently unknown to Plaintiffs, and therefore Plaintiffs sue such Defendants by such fictitious names.

34.     Plaintiffs are informed and believe, and thereon alleges, that DOES 1 through 10 were the partners, agents, owners, shareholders, managers, or employees of PORSCHE at all relevant times.

35.     Plaintiffs are informed and believe, and on that basis allege, that each of the fictitiously named Defendants was in some manner legally responsible for the actionable and unlawful actions, policies and practices as alleged herein. Plaintiffs will amend this Complaint to set forth the true names and capacities of said Defendants, along with the appropriate charging allegations, when the same have been ascertained, as may be necessary. Each reference in this Complaint to "PORSCHE" or "Defendant" is also a reference to all Defendants sued as Does 1 through 10.

36.     Plaintiffs reserve the right to expand, limit, modify, or amend these allegations at any time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

**PLAINTIFFS' FACTS**

37.     Plaintiffs paid for repairs to the VEHICLE which should have been covered under the high-priced emissions warranty. As a result, Plaintiffs have suffered damage.

38.     On information and belief, PORSCHE's failure to provide proper coverage was an intentional omission by PORSCHE designed to limit PORSCHE's warranty exposure and part of PORSCHE's scheme to fail to properly and comprehensively identify all of the parts that should be identified as high-priced warranted parts and covered for 7-years or 70,000

1    miles under the California emissions warranty.

2          39.    The details of how PORSCHE actually applied the CCR formula are

3    exclusively within PORSCHE's possession. Similarly, the information regarding what other

4    parts satisfied the CCR requirements but were not identified by PORSCHE as emissions

5    warranty parts and high-priced emissions warranty parts also are in the exclusive possession

6    of PORSCHE.

7          40.    When PORSCHE vehicles are presented to PORSCHE dealerships for repairs

8    of defects which should be covered under the 7-year 70,000-mile California emissions

9    warranty, but are not identified by PORSCHE's warranty booklets as being covered parts,

10   PORSCHE refuses to provide coverage under the emissions warranty.

11         41.    Plaintiffs presented the VEHICLE to a PORSCHE authorized repair facility for

12   repairs prior to the end of the 7-year 70,000-mile California emissions warranty period for

13   high-priced emissions parts. Plaintiffs were wrongfully denied warranty coverage.

14         42.    The reason that Plaintiffs were charged for said repairs was not the result of an

15   individual issue relating to a PORSCHE Dealership, or an oversight by a PORSCHE

16   Dealership in failing to identify the parts as eligible for coverage under the California

17   emissions warranty, or specifically the 7-year 70,000-mile California emissions warranty.

18   Rather, Plaintiffs were charged for said repairs because of PORSCHE's uniform and

19   systematic business practice of intentionally refusing to identify in the PORSCHE warranty

20   booklet, and in resources provided to its dealerships, all of the parts that should be identified

21   as high-priced warranted parts under California law in order to limit the amount of warranty

22   claims paid by PORSCHE.

23         43.    CCR section 2037(c)(1)(B) regarding "High-priced Warranty Parts" requires

24   PORSCHE to identify the "high-priced warranted parts . . . which have an individual

25   replacement cost at the time of certification exceeding the cost limit defined in section (c)(3)."

26         44.    PORSCHE intentionally failed to identify all said components in order to

27   reduce the amount of money that PORSCHE spends on warranty-related repairs. If PORSCHE

28   complied with California law and properly identified all parts as high-priced warranted parts

1   that should be identified as such, then PORSCHE dealerships would properly provide

2   warranty coverage for said high-priced warranted parts.

3        45.    PORSCHE's conduct violates California's unfair business practices statute,

4   California Business and Professions Code section 17200, et seq. (the "UCL"), and violates the

5   Consumers Legal Remedies Act, Civil Code section 1750, et seq.

6        46.    Plaintiffs and other members of the Class have suffered damage as a result of

7   PORSCHE's wrongful conduct.

8                    **REPAIRS OF APRIL 17, 2017, AT 66,286 MILES**

9        47.    On April 17, 2017, at 66,286 miles, Plaintiffs presented the Vehicle to Rusnak

10  Westlake Porsche ("Rusnak"), located at 3839 Auto Mall Drive, Thousand Oaks, California

11  91362, because the engine started to overheat. Rusnak is a Porsche factory authorized repair

12  facility. This repair attempt occurred within the California emissions warranty coverage time

13  period, because the 7-years 70,000-miles California emissions warranty would not have

14  expired until March 4, 2018, or 70,018 miles, after the April 17, 2017, repair attempt at

15  66,286 miles.

16  *The Coolant Pump Had a Covered Defect*

17       48.    Rusnak diagnosed the Vehicle as having a defective coolant pump. Plaintiffs

18  were advised that Plaintiffs would have to pay to repair the defective coolant pump. Plaintiffs

19  were wrongfully denied warranty coverage.

20       49.    The repair record which identified the coolant pump as being defective reads:

21  "Customer states that the engine temperature is high and there is a warning for low coolant.

22  Inspect system and perform pressure test. Water pump is leaking and is causing the warning to

23  come on. Replace water pump and bleed system. Perform road test and found the coolant

24  system is operating properly."

25       50.    The repair record clearly indicated that the coolant pump had a defect, with the

26  defect being that the coolant pump was leaking. The diagnosis of the coolant pump being

27  defective did not contain any information stating that the defect was the result of collision

28  damage or any other outside influence. The record simply stated that the part had was leaking.

51.     13 Cal. Code Regs. § 2037(b) states, "The manufacturer of each motor vehicle or motor vehicle engine shall warrant to the ultimate purchaser and each subsequent purchaser that the vehicle or engine is: (1) Designed, built, and equipped so as to conform with all applicable regulations adopted by the Air Resources Board pursuant to its authority in chapters 1 and 2, part 5, division 26 of the Health and Safety Code; and (2) Free from defects in materials and workmanship which cause the failure of a warranted part to be identical in all material respects to the part as described in the vehicle or engine manufacturer's application for certification, including any defect in materials or workmanship which would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate, for a period of three years or 50,000 miles, whichever first occurs. See 13 Cal. Code Regs. § 2037(b).

52.     13 Cal. Code Regs. § 2037 states that the California emissions warranty covers defects in design, materials, and workmanship.

53.     13 Cal. Code Regs. § 2037 states that the time period for the coverage is extended to 7-years and 70,000-miles if the part is "high priced."

54.     Defects in materials and workmanship are synonymous with manufacturing defects. A defect in materials and workmanship would include defects in the materials used to manufacture the Vehicle, or a defect in the assembly of the Vehicle.

55.     Absent any evidence to the contrary, a repair record which indicates that a coolant pump is leaking after several years of normal use would lead to the conclusion that the pump was defective in materials, because the materials ultimately failed to perform properly, resulting in the coolant pump leaking. That is what occurred with regard to the Vehicle—the coolant pump failed due to a defect in materials and workmanship. There is no evidence to the contrary. Any argument by Defendant that the failure occurred as the result of any other cause would be improper, because Defendant's own actions in failing to provide proper coverage of the part as a high-cost emissions related part deprived Defendant and Plaintiffs of any causation-based coverage analysis by Rusnak at the time of repair.

56.     Additionally, even in circumstances where an emissions related part is not performing properly due to a design defect, the design defect would still be covered under the

1  California emissions warranty, because the California emissions warranty, 13 Cal. Code Regs.

2  § 2037(b), commands that "[t]he manufacturer of each motor vehicle or motor vehicle engine

3  shall warrant to the ultimate purchaser and each subsequent purchaser that the vehicle or

4  engine is: (1) Designed, built, and equipped so as to conform with all applicable regulations

5  adopted by the Air Resources Board pursuant to its authority in chapters 1 and 2, part 5,

6  division 26 of the Health and Safety Code."

7  57.    Furthermore, the repair or replacement of warranted parts which are still within

8  the warranty period must be performed at no charge to the vehicle or engine owner, except

9  under circumstances specified in the warranty regulations. (Cal. Code Regs., tit. 13, § 2037,

10  subd. (d)(4).) Manufacturers may not deny a warranty claim that would otherwise be covered

11  under the California vehicle emissions warranty requirements unless the manufacturer can

12  prove both of the following: (a) the vehicle or engine has been abused, neglected, improperly

13  maintained, or has unapproved modifications, and (b) that such abuse, neglect, improper

14  maintenance, or unapproved modification was the direct cause of the need for the repair or

15  replacement of the part." Declaration of Allen Lyons, Chief of the California Air Resources

16  Board 's Emissions Certification and Compliance Division, dated July 6, 2021, paragraph 12

17  (Attached as Exhibit "1"), quoting Cal. Code Regs., tit. 13, §§ 2037, subd. (i), 2039.

18  58.    If the manufacturer wishes to refuse warranty coverage, it is the manufacturer's

19  obligation to prove that the refusal is proper. It is not the consumer's obligation to prove that

20  coverage should be extended.

21  59.    With respect to Plaintiffs' failed coolant pump, as a result of Defendant's

22  failure to identify the coolant pump as an emissions related part, Rusnak simply determined

23  that because the Vehicle's 4-year 50,000 mile new car warranty had expired, Plaintiffs would

24  be required to, and did, pay out-of-pocket for the repairs.

25  *The Cost of the Coolant Pump Exceeds the High-Priced Threshold*

26  60.    The coolant pump for the Vehicle, and for all model year 2011 through 2018

27  Porsche Cayenne hybrid vehicles, as well as model year 2012 through 2016 Porsche Panamera

28  hybrid vehicles, should have been covered under the high-priced California emissions

1   warranty because the cost to repair the coolant pump far exceeded the high-priced threshold.

2        61.     The threshold for 2011 was $540.00, for 2012 it was $550.00, for 2013 it was

3   $570, for 2014 it was $580.00, for 2015 it was $590.00, for 2016 it was $600.00, for 2017 it

4   was $600.00, and for 2018 it was $610.00.

5        62.     The cost that Plaintiffs paid to repair the coolant pump in 2017 was

6   $1,179.78—almost twice the highest cost threshold. The high-priced threshold for establishing

7   if an emissions part is covered under the 7-years and 70,000-miles warranty as high-priced has

8   always been less than $1,179.78, even in 2018, which was after Plaintiffs paid for the repair.

9   *The Coolant Pump is an Emissions Related Part*

10        63.     Furthermore, the coolant pump is an emissions related part.

11        64.     The coolant pump is part of the Vehicle's thermal management system. The

12   coolant pump facilitates circulating coolant throughout the engine, which heats up the coolant.

13   The Coolant Pump Serves as an Integral Part of Transmission Efficiency

14        65.     One function that the coolant pump performs is to circulate heated coolant to

15   the Vehicle's transmission. The purpose of circulating heated coolant to the transmission is to

16   raise the transmission's temperature so that the transmission will be more fuel efficient—thus

17   decreasing regulated emissions.

18        66.     The design of the coolant pump's system—which circulates heated coolant to

19   the transmission—was specifically created by Defendant to reduce regulated emissions, and

20   the circulation of heated coolant to the transmission was specifically designed as an emission

21   reducing feature. When the coolant pump has a defect, such as the coolant pump leaking, this

22   defect reduces the coolant pump's ability to circulate coolant to the transmission, resulting in

23   the transmission not heating up as designed, which thus increases regulated emissions.

24        67.     Exhibit "2" is an internal California Air Resources Board memo which states

25   that a vehicle's transmission is an emissions related part covered under the California

26   emissions warranty. Although the coolant pump is not the transmission, the coolant pump's

27   function of providing coolant to the transmission in order to heat up the transmission is an

28   integral feature of proper transmission function specifically designed to increase efficiency

1   and reduce emissions. When the coolant pump is leaking resulting in reduced circulation of

2   coolant to the transmission, regulated emissions increase.

3       68.     The Declaration of Allen Lyons, attached as Exhibit "1", states that a part

4   subject to California's vehicle emissions warranty as a warranted part includes, "for 1990 and

5   subsequent model year passenger cars, light-duty trucks, and medium duty vehicles other than

6   those identified in (a), above, any part installed on a motor vehicle or motor vehicle engine by

7   the vehicle or engine manufacturer, or installed in a warranty repair, which affects any

8   regulated emission from a motor vehicle or engine which is subject to California emission

9   standards."

10  The Coolant Pump Has a Built-In Thermostat

11      69.     The Vehicle's coolant pump contains a circular fixture which, when activated,

12  encases the coolant impeller. The circular fixture serves as a thermostat, regulating the flow of

13  coolant through the engine in order to reduce emissions. The purpose of encasing the coolant

14  pump impeller is to reduce or increase the flow of coolant throughout the engine based upon

15  the engine's overall thermal management system and emissions strategies. The coolant pump

16  installed in the Vehicle is an integral part of emissions control in the Vehicle.

17      70.     When the coolant pump is leaking, the leaking decreases the effectiveness of

18  the thermostat and defeats the design features of the thermostat in regulating engine

19  temperature.

20      71.     It is an automotive industrywide accepted custom and practice to cover the

21  coolant thermostat as a part covered under the California emissions warranty. Virtually every

22  vehicle distributor, including Defendant's parent company Volkswagen, acknowledges in their

23  warranty books that a coolant thermostat is an emissions related part covered by the California

24  emissions warranty. The coolant pump includes a thermostat. The coolant pump also serves as

25  a thermostat and is thus an emissions related part.

26  Coolant Pump Failure Triggers OBDII Fault Code

27      72.     When the coolant pump installed in the Vehicle fails and causes the engine to

28  overheat, as is what occurred at 66,286 miles, at least one OBDII fault code is triggered,

1    causing a Malfunction Indicator Light (MIL) to illuminate. It is Plaintiff's information and

2    belief that when the Vehicle overheats, fault codes P2181 and P0634 are generated—which

3    causes the MIL to illuminate.

4          73.    The declaration of Allen Lyons, attached as Exhibit "1", states that parts

5    covered under the California emissions warranty include any parts that can or are required to

6    illuminate the MIL in the event of a malfunction, even if the primary function of the

7    component is not emission control, within the warranty period. (Cal. Code Regs., tit. 13, §

8    2037, subd. (b)(2).) As a result, the coolant pump should be covered under the California

9    emissions warranty.

10   The Coolant Pump Failure Would Cause the Vehicle to Fail a Smog Check

11         74.    The California emissions warranty mandates that for each motor vehicle

12   produced in 1990 and subsequent years, the manufacturer shall warrant to the ultimate

13   purchaser and each subsequent purchaser that the vehicle is designed, built, and equipped so

14   as to conform with all applicable regulations adopted  by the Air Resources Board pursuant to

15   its authority in chapters 1 and 2, part 5, division 26 of the Health and Safety Code, and free

16   from defects in materials and workmanship which cause the failure of a warranted part to be

17   identical in all material respects to the part as described in the vehicle or engine

18   manufacturer's application for certification, for a period of 3-years or 50,000-miles. The

19   warranty is extended to 7-years and 70,0000 miles for high priced emissions parts. 13 CCR §

20   2037.

21         75.    Pursuant to its authority in chapters 1 and 2, part 5, division 26 of the Health

22   and Safety Code, one applicable regulation adopted by the Air Resources Board is Health and

23   Safety Code Section 44012, commonly referred to as the California smog test.

24         76.    In November of 2017, the California Bureau of Automotive Repair published

25   the Smog Check Manual which details how to administer a California smog check pursuant to

26   Health and Safety Code is Health and Safety Code Section 44012. Attached as Exhibit "3" is a

27   copy of the manual. The instructions set forth in the Smog Check Manual are not of  recent

28   vintage and predate the manufacture and distribution of the Vehicle.

77. Section 1.2.3 Emissions Test Abort Conditions, embodied on page 13 of the Smog Check Manual, indicates that a smog test shall be aborted if the vehicle being tested is overheating. Thus, if a vehicle is overheating, the vehicle shall fail a smog test.

78. As a result of the Vehicle's coolant pump defect, the Vehicle overheated, thus possessing a defect which would cause the Vehicle to fail a smog test mandated pursuant to chapters 1 and 2, part 5, division 26 of the Health and Safety Code is Health and Safety Code. As a result, the coolant pump defect should have been covered by the California emissions warranty.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

79. Plaintiffs re-allege and incorporate by reference each allegation set forth above.

80. Plaintiffs bring this class action pursuant to Federal Rules of Civil Procedure Rules 23(a), (b)(2) and (b)(3) on behalf of themselves and members of the Class as defined below.

81. Excluded from the Class are Defendant, and its subsidiaries and affiliates; its current and former officers, directors, and employees (and members of their immediate families); and the legal representatives, heirs, successors or assigns of any of the foregoing.

82. All claims alleged herein arise under California law for which Plaintiffs seek relief authorized by California law.

83. The Class Vehicles are defined as all PORSCHE vehicles which are fitted with a coolant pump identified as SKU part number PAC-121-018A, as well as all superseded coolant pump part numbers. These coolant pumps are installed in Model Year 2011 through 2018 Porsche Cayenne hybrid vehicles and 2012 through 2016 Porsche Panamera hybrid vehicles ("Class Vehicles").

84. Plaintiffs' proposed class consists of and is defined as follows:

> All persons in California who have been owners or lessees of Class Vehicles and who have paid for repairs and parts pertaining to defective coolant pumps that should have been covered under PORSCHE's "high-priced warranted parts" 7-year 70,000-mile California emissions warranty (the "Class").

///

1      85.    As required by Fed. R. Civ. P. 23(a)(2) and (b)(3), there are questions of law

2  and fact common to the Class, and those common questions predominate over any questions

3  affecting only individual members. Among the common questions of law and fact include:

4        (a)    Whether PORSCHE has failed, and is failing, to comply with the High-Cost

5               Emissions-Related Parts Warranty by failing to provide a 7-year 70,000-mile

6               California emissions warranty for parts that should have been identified by

7               PORSCHE as high-priced warranted parts pursuant to the CCR relating to the

8               Class Vehicles, including but not limited to coverage of the coolant pump.

9        (b)    Whether PORSCHE has failed, and is failing, to identify for consumers and

10              dealerships all of the parts that should be identified as high-priced warranted

11              parts, and thus entitled to coverage under the 7-year 70,000-mile California

12              High-Cost Emissions-Related Parts Warranty relating to the Class Vehicles,

13              including but not limited to coverage of the coolant pump.

14        (c)    Whether PORSCHE has engaged in, and is engaging in, a systematic business

15              practice of intentionally failing to identify all of the parts that should be

16              identified as high-priced warranted parts and thus entitled to coverage under the

17              7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty

18              under the CCR relating to the Class Vehicles, including but not limited to

19              coverage of the coolant pump.

20        (d)    Whether PORSCHE has failed, and is failing, to identify all of the parts that

21              should be identified as high-priced warranted parts and thus entitled to coverage

22              under the 7-year 70,000-mile California High-Cost Emissions-Related Parts

23              Warranty in an effort to reduce the amount of money that PORSCHE spends on

24              warranty-related repairs relating to the Class Vehicles, including but not limited

25              to coverage of the coolant pump.

26        (e)    Whether PORSCHE's conduct of failing to identify all of the parts that should be

27              identified as high-priced warranted parts and thus covered by the 7-year 70,000-

28              mile California High-Cost Emissions-Related Parts Warranty results in

1    consumers suffering financial loss relating to the Class Vehicles, including but

2    not limited to coverage of the coolant pump.

3    (f)   Whether PORSCHE's conduct of failing to identify all of the parts relating to the

4    Class Vehicles, including but not limited to coverage of the coolant pump, that

5    should be identified as high-priced warranted parts and thus covered by the 7-

6    year 70,000-mile California High-Cost Emissions-Related Parts Warranty, results

7    in wrongfully minimizing the amount of money that PORSCHE has to pay out in

8    warranty claims.

9    (g)   Whether PORSCHE's conduct of failing to identify all of the parts that should be

10   identified as high-priced warranted parts relating to the Class Vehicles, including

11   but not limited to coverage of the coolant pump, and thus covered by the 7-year

12   70,000-mile California High-Cost Emissions-Related Parts Warranty violates

13   California law.

14   (h)   Whether PORSCHE has engaged in, and is engaging in, unlawful and unfair

15   business practices in violation of California Business & Professions Code section

16   17200, *et seq.* with regard to PORSCHE's failure to identify all of the high-

17   priced warranted parts relating to the Class Vehicles, including but not limited to

18   coverage of the coolant pump, that should be covered by the 7-year 70,000-mile

19   California High-Cost Emissions-Related Parts Warranty.

20   (i)   Whether Plaintiffs and Class members are entitled to injunctive relief regarding

21   PORSCHE's failure to identify all of the high-priced warranted parts relating to

22   the Class Vehicles, including but not limited to coverage of the coolant pump,

23   that should be covered by the 7-year 70,000-mile California High-Cost

24   Emissions-Related Parts Warranty.

25   (j)   The appropriate amount of restitution, or monetary penalties resulting from

26   PORSCHE's violations of California law.

27   (k)   Whether PORSCHE has engaged in, and is engaging, in concealment pertaining

28   to PORSCHE's failure to identify all of the high-priced warranted parts relating

to the Class Vehicles, including but not limited to coverage of the coolant pump, that should be covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty.

86.   Numerosity: As required by Fed. R. Civ. P. 23(a)(1), the members of the Class are so numerous that joinder of all Class members would be unfeasible and impractical, and the resolutions of their claims through the procedure of a class action will be of benefit to the Parties and the Court.  The membership of the entire Class is unknown to Plaintiffs at this time; however, the Class is estimated to be greater than one hundred (100) individuals and the identity of such membership is readily ascertainable by inspection of Defendant's records.

87.   Typicality: As required by Fed. R. Civ. P. 23(a)(3), Plaintiffs' claims are typical of the claims of all Class members since Plaintiffs and all members of the Class suffered damages as result of Defendant's concealment and wrongful conduct set forth herein.

88.   Adequacy: As required by Fed. R. Civ. P. 23(a)(4), Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have no interests adverse or antagonistic to those of the Class and has retained counsel competent and experienced in class action litigation who will zealously prosecute this matter on behalf of the Class to its conclusion

89.   Superiority: As required by Fed. R. Civ. P. 23(b)(3), the nature of this action makes the use of class action adjudication superior to other methods. A class action will achieve economies of time, effort, and expense as compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the entire class.

90.   Defendant keeps extensive computerized records of its customers. Defendant has one or more databases through which a significant majority of Class members may be identified and ascertained, and it maintains contact information, including email and home mailing addresses, through which notice of this action could be disseminated in accordance with due process requirements.

91.   Class certification of Plaintiffs' claims is also appropriate pursuant to Fed. R.

1   Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable

2   to Plaintiffs and the Class, making appropriate both declaratory and injunctive relief with

3   respect to Plaintiffs and the Class.

4   **TOLLING OF THE STATUTE OF LIMITATIONS**

5   92.    PORSCHE has actively engaged in misleading and dishonest conduct relating

6   to its failure to properly identify all of the parts that should be covered under the 7-year

7   70,000-mile California emissions warranty. PORSCHE has engaged in said misleading,

8   dishonest, and wrongful conduct with regard to its representations to both CARB and its

9   consumers.

10   93.    Despite acting diligently, Plaintiffs and the Class cannot be reasonably

11   expected on their own to learn or discover what parts and repairs should be identified as high-

12   priced and covered under the 7-year 70,000-mile California emissions warranty. Therefore,

13   the discovery rule is applicable to the claims asserted by Plaintiffs and members of the Class,

14   and the statute of limitations for bringing the claims set forth herein should be tolled.

15   94.    Specifically, Plaintiffs have acted diligently by presenting the Vehicle to

16   Rusnak, a PORSCHE factory authorized repair facility, for repairs. The issue of whether the

17   Class Vehicles' coolant pumps should be covered under the high-priced California emissions

18   warranty is a highly technical issue which requires detailed and extensive engineering and

19   automotive design knowledge. PORSCHE and Rusnak possess this knowledge, but Plaintiffs

20   do not.

21   95.    Plaintiffs acted diligently by presenting the Vehicle to Rusnak for repairs and

22   relying on the representations by both Rusnak and by PORSCHE, via the warranty booklet,

23   that the coolant pump was not covered. Plaintiffs subsequently discovered that the coolant

24   pump should have been covered under the 7-year 70,000-mile warranty and took appropriate

25   action within a reasonable time after discovery.

26   96.    PORSCHE has actual and constructive knowledge that it is violating California

27   law by failing to identify the coolant pump and other parts as high-priced warranted parts, and

28   by failing to provide a 7-year 70,000-mile California emissions warranty relating to said parts.

1   97. PORSCHE has concealed from Plaintiffs and members of the Class that

2 PORSCHE is violating California law as set forth herein.

3   98. Any applicable statute of limitation is tolled by PORSCHE's knowledge, active

4 concealment, and wrongful conduct set forth herein. PORSCHE is further estopped from

5 relying on any statute of limitation because of its concealment set forth herein.

6         **FIRST CLAIM FOR RELIEF**

7      **Violation of California Unfair Competition Law**

8      **(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

9   99. Plaintiffs re-allege and incorporate by reference each allegation set forth above.

10   100. California Business and Professions Code section 17200, et seq. (the "UCL")

11 prohibits "any unlawful, unfair or fraudulent business act or practice." PORSCHE has

12 committed acts of unfair competition proscribed by the UCL, including the acts and practices

13 alleged herein.

14   101. The UCL imposes strict liability. Plaintiffs need not prove that PORSCHE

15 intentionally or negligently engaged in unlawful or unfair business practices – only that such

16 practices occurred.

17   102. PORSCHE is a "person" as defined by Business & Professions Code § 17201.

18   103. As a direct and proximate result of PORSCHE's acts and practices in violation

19 of the UCL, Plaintiffs and members of the Class have suffered injury in fact and lost money or

20 property as set forth above and will continue to do so.

21          <u>**Unlawful Prong**</u>

22   104. A business practice is "unlawful" under the UCL if it is forbidden by law or

23 regulations, including standard of professional conduct.

24   105. The violation of any law or regulation may serve as the predicate for a violation

25 of the "unlawful" prong of the UCL.

26   106. PORSCHE failed to comply with the California Emissions Warranty

27 requirements pursuant to the CCR by failing to provide 7-year 70,000-mile warranty coverage

28 for all parts that should be designated by PORSCHE as high priced emissions parts. The

California Emissions Warranty applies to all Class Vehicles. 13 CCR 2037(a). Pursuant thereto, manufacturers shall warrant that its vehicles conform with the California Air Resources Board regulations and are free from defects which cause the failure of a warranted part to perform as described in the application for certification, including defects which would cause the vehicle's on-board diagnostic malfunction indicator to illuminate, for 3 years or 50,000 miles. 13 CCR 2037(b)(1)-(2).

107. The vehicle manufacturer is PORSCHE, which is the manufacturer granted certification for the Class Vehicles. 13 CCR 2035(c)(5).

108. The warranty period shall be 7 years or 70,000 miles for high-priced warranted parts. 13 CCR 2037(b)(3).

109. High-priced parts warranted parts are those parts which, when taking into consideration the cost to diagnose, replace and pay for the failed part, exceed the cost limit defined in 13 CCR 2037(c)(3).

110. PORSCHE has failed to provide 7-year 70,000 mile warranty coverage for all parts that PORSCHE should have designated as high priced emissions parts. Such failure has resulted in damage to Plaintiffs and members of the Class.

111. Moreover, while Plaintiffs do not yet know the specific information that PORSCHE did or did not provide to CARB, on information and belief, PORSCHE did not designate all of the parts as high-priced warranted parts that should be covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty. Thereby, PORSCHE also was able to avoid identifying all of the parts that PORSCHE should have identified as high-priced emissions parts in the warranty books for the Class vehicles, which purport to identify all parts covered under the high priced California emissions warranty for 7-year/70,000 mile California emissions warranty. Thus, PORSCHE's violation of § 2037(c)(1)(B) directly affected communications with consumers. By violating Section 2037(c)(1)(B), PORSCHE was able to avoid disclosing in the warranty books all of the parts that should have been identified as high-priced emissions parts, thus saving money by reducing warranty coverage claims.

112.     PORSCHE's acts of unlawful competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief.  Plaintiffs also seek attorneys' fees and costs pursuant to, inter alia, C.C.P. § 1021.5.

**Unfair Prong**

113.     PORSCHE's conduct violates the unfair prong of the UCL.

114.     An act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition and is not an injury the consumers themselves could reasonably have avoided. An act or practice also is unfair if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. An act or practice also is unfair if Plaintiffs' claims are "tethered" to specific constitutional, statutory or regulatory provisions.  PORSCHE's conduct as alleged herein fits the bill.

115.     In particular, PORSCHE engages and has engaged in a systematic business practice of intentionally failing to identify, in the PORSCHE warranty book at the time of distribution, or in resources provided to its dealerships, myriad parts and components which PORSCHE is statutorily obligated to identify as high-priced warranted parts by operation of law.

116.     PORSCHE engaged in this unscrupulous and unlawful activity in an effort to reduce the amount of money that it spends on warranty-related repairs. PORSCHE was willing to take the risk of engaging in such unlawful activity because it knew that it would be extremely difficult, if not impossible, for consumers to ever discovery this unlawful conduct. Had PORSCHE complied with California law, then PORSCHE dealerships would have properly provided warranty coverage for said high-priced warranted parts.

117.     Further, PORSCHE's conduct is unfair because it intentionally refuses to provide warranty coverage for the sole purpose of wrongfully limiting its warranty claims, with no regard for the fact that the public is being forced to pay for repairs which should be covered under the 7-year 70,000-mile California emissions warranty. Plaintiffs and members

of the Class have suffered injury in fact and lost money or property as a result of PORSCHE's unfair business acts and practices as set forth herein.

118.    PORSCHE's failure to properly identify vehicle parts and components as high-priced warranted part is a uniform, systematic, and intentional business practice intended to minimize the amount of money that PORSCHE has to pay out in warranty claims. This conduct violates California law.

119.    As a direct and proximate result of PORSCHE's acts and practices in violation of the UCL, Plaintiffs and members of the Class have paid out of pocket for repairs that should have been covered under the 7-year 70,000-mile California emissions warranty. Forcing consumers to pay out of pocket to repair or replace vehicle components that should be covered under warranty is clearly unfair.

120.    PORSCHE's conduct does not benefit consumers or competition. Plaintiffs and members of the Class could not reasonably avoid the injury each of them suffered or will suffer, which injury is substantial. PORSCHE's conduct only benefits PORSCHE because Plaintiffs could not have possibly benefitted from paying out-pocket-pocket for repairs which should have been fully covered by the 7-year 70,000-mile California emissions warranty.

121.    The gravity of the consequences of PORSCHE's conduct as described above outweighs the justification, motive, or reason therefor, and is immoral, unethical, and unscrupulous.

122.    PORSCHE's conduct also offends established public policy that is tethered to legislatively declared policies as set forth in the laws detailed above, including California laws and regulations regarding California's Emission Control System Warranty Requirements, or is substantially injurious to the public, for the reasons set forth above.

123.    To the extent that any definition of "unfair" requires a balancing test or weighing various factors, such an inquiry is fact intensive and requires a full factual record as to PORSCHE's justification and motives for its conduct, and as to the impact of PORSCHE's conduct on Plaintiffs and Class members.

124.    PORSCHE's acts of unfair competition as set forth above present a continuing

1    threat and will persist and continue to do so unless and until this Court issues appropriate

2    injunctive relief.  Plaintiffs also seek attorneys' fees and costs pursuant to, inter alia, C.C.P. §

3    1021.5.

4                                    **Deceptive Prong**

5         125.    Plaintiffs' claim under this prong is predicated on omissions, not

6    misrepresentations. While the warranty booklet for Class Vehicles claims to identify all of the

7    parts covered under the 7-year 70,000-mile California emissions warranty, the warranty book

8    omits parts that that should have been listed as covered by the high-priced emissions warranty.

9         126.    PORSCHE engages in a uniform and systematic business practice of

10   intentionally failing to identify in the PORSCHE warranty book, and in resources provided to

11   its dealerships, all of the parts that should be identified as high-priced warranted parts.

12   PORSCHE does this in an effort to intentionally conceal the identity of the parts which should

13   be covered under the 7-year 70,000-mile California emissions warranty for high-priced

14   emissions parts; to intentionally mislead consumers with regard to what parts are covered

15   under the 7-year 70,000-mile California emissions warranty for high-priced parts; and to

16   reduce the amount of money that PORSCHE spends on warranty-related repairs.

17        127.    Because warranted parts necessary for the operation of the vehicles, the parts

18   that PORSCHE failed to properly identify as high-priced relate to the central functionality of

19   the vehicles and are critical to the vehicles' operation. If PORSCHE complied with California

20   law, and properly identified all parts as high-priced warranted parts which should be identified

21   as such, then PORSCHE dealerships would properly provide warranty coverage for said high-

22   priced warranted parts.

23        128.    PORSCHE's wrongful conduct is a systematic and intentional business practice

24   on the part of PORSCHE to minimize the amount of money that PORSCHE has to pay out in

25   warranty claims. This conduct violates California law.

26        129.    Said conduct is likely to deceive an ordinary consumer as PORSCHE concealed

27   this information from consumers and from PORSCHE's dealerships, in an effort by

28   PORSCHE to minimize the amount of money that PORSCHE must pay out in warranty

1   claims.

2   130.   One of the ways PORSCHE misleads consumers relates to the information that

3   PORSCHE provides to consumers in the PORSCHE warranty book. PORSCHE intentionally

4   omits information from the warranty book by intentionally failing to fully identify all of those

5   parts or components which should have rightfully been classified as high-priced warranted

6   parts which are entitled to coverage under the 7-year 70,000-mile California emissions

7   warranty.

8   131.   In evaluating the repair costs to be charged, Plaintiffs justifiably relied on the

9   information in the warranty booklet about parts that should be covered under the high-priced

10   emissions warranty and was deceived and suffered damage as a result of PORSCHE's

11   intentional and wrongful conduct.

12   132.   PORSCHE is and was under a duty to disclose to consumers and to its

13   dealerships all of the parts which it is required to cover under the 7-year 70,000-mile

14   California emissions warranty because:

15   (1)   PORSCHE is and was in a superior position to know the true state of facts about

16   the duration of the 7-year 70,000-mile California emissions warranty and which

17   parts should be covered as high-priced warranted parts;

18   (2)   PORSCHE has made partial disclosures about the extent of the 7-year 70,000-

19   mile California emissions warranty;

20   (3)   PORSCHE has actively concealed and failed to identify all of the parts that are

21   covered under the 7-year 70,000-mile California emissions warranty; and,

22   (4)   Members of the Class, including Plaintiffs, have suffered actual loss due to

23   PORSCHE's concealment and false representations.

24   133.   The facts concealed and not disclosed by PORSCHE to Plaintiffs and members

25   of the Class are material. Had Plaintiffs and members of the Class known the true extent of the

26   7-year 70,000-mile California emissions warranty, and had PORSCHE been truthful to its

27   dealerships and members of the Class with regard to identifying all of the parts and repairs

28   that are covered under the 7-year 70,000-mile California emissions warranty, Plaintiffs and

1   members of the Class would have been able to avoid spending money in order to repair

2   PORSCHE vehicles sold and leased in California. As a result, Plaintiffs and members of the

3   Class have suffered damage.

4        134.    Furthermore, PORSCHE has refused to, and continues to refuse to provide 7-

5   year 70,000-mile California emissions warranty coverage relating to all repairs which should

6   be covered under said warranty pursuant to California law. This refusal is intentional, willful,

7   unfair, and unlawful.

## PRAYER FOR RELIEF

9        WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray

10  for relief and judgment against PORSCHE as follows:

11       1.    Plaintiffs, on behalf of themselves and members of the Class, requests that the

12  Court enter judgment against PORSCHE as follows:

13            (a)    An order certifying the proposed Class designating Plaintiffs as named

14  representatives of the Class, and designating the Plaintiffs' Counsel as Class Counsel;

15            (b)    A declaration that PORSCHE is financially responsible for notifying all

16  Class members about the wrongful conduct set forth herein;

17            (c)    An order enjoining PORSCHE from further deceptive distribution,

18  sales, and lease practices, and to reimburse both Plaintiffs and the Class for the money

19  wrongfully paid by Plaintiffs and members of the Class relating to repairs which should have

20  been covered by PORSCHE under the 7-year 70,000-mile California emissions warranty;

21            (d)    An award to Plaintiffs and members of the Class of compensatory,

22  exemplary, and statutory damages, including interest, in an amount to be proven at trial;

23            (e)    An award to Plaintiffs and members of the Class of any repair costs they

24  are owed;

25            (f)    A declaration that PORSCHE must disgorge, for the benefit of the

26  Class, all or part of the ill-gotten profits it received as a result of the wrongful conduct set

27  forth herein, or make full restitution to Plaintiffs and members of the Class;

28            (g)    An award of attorneys' fees and costs, as allowed by law;

1           (h)     An award of attorneys' fees and costs pursuant to California Code of

2  Civil Procedure § 1021.5;

3           (i)     An award of pre-judgment and post-judgment interest;

4           (j)     Leave to amend the Complaint to conform to the evidence produced at

5  trial; and

6           (k)     Other relief as may be appropriate under the circumstances.

7

8                            **DEMAND FOR JURY TRIAL**

9      Pursuant to Federal Rules of Civil Procure, Rule 38(b), Plaintiffs hereby demand a trial

10  by jury as to all claims so triable.

11

12  Dated: April 22, 2022                Respectfully submitted,

13                                  **THE LAW OFFICE OF ROBERT STARR**

14

15                        By:    /S/ Theodore R. Tang

16                               Theodore Tang
                                    Attorney for Plaintiffs

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit "1"
Declaration of Allen Lyon Dated July 6, 2021



***ROB BONTA***
***Attorney General***

***State of California***
***DEPARTMENT OF JUSTICE***

455 GOLDEN GATE AVENUE, SUITE 11000
SAN FRANCISCO, CA 94102-7004

Telephone: (415) 510-4448
Facsimile: (415) 703-5480
E-Mail: Ryan.Hoffman@doj.ca.gov

July 6, 2021

RE:   Declaration of Allen Lyons regarding California's vehicle emissions warranty

Attached to this letter is a Declaration of Allen Lyons, Chief of the Emissions Certification and Compliance Division at the California Air Resources Board (CARB), pertaining to California's vehicle emissions warranty.

CARB provides this Declaration with the understanding that it will be submitted only in litigation centered on California's vehicle emissions warranty. This Declaration is made for the sole purpose of educating the Courts about CARB's interpretation and implementation of California's warranty requirements, and is not submitted on behalf or in support of any particular party or filing. The party submitting this Declaration in any court case is not to represent that CARB endorses, supports, or opposes any motion or other filing, or that CARB endorses, supports, or opposes any particular party or position. This Declaration should not be captioned in a manner that suggests it is in support of or opposition to any court filing.

CARB requests to be notified through its counsel at the California Department of Justice, Office of the Attorney General whenever this Declaration is filed in a court case, and that CARB's counsel be provided with copy of each filing.

Sincerely,

*/s/ Ryan R. Hoffman*
Ryan R. Hoffman
Deputy Attorney General

1    I, Allen Lyons, declare:

2    1.      I am employed by the California Air Resources Board (CARB) as Chief of the Emissions

3    Certification and Compliance Division (ECCD). I have been in this position for two years. Before

4    that, I was a Staff Air Pollution Specialist within ECCD's On-Board Diagnostics Branch. In my

5    role as ECCD Chief, I oversee and manage the certification, on-board diagnostic (OBD), and in-

6    use compliance programs, the latter of which includes warranty. I am familiar with CARB's

7    warranty regulations and how CARB implements those regulations.   In my role as ECCD Chief,

8    I have personal knowledge of the facts and positions set forth below and, if called as a witness,

9    can and would testify thereto under oath.

10    2.      This declaration is made for the sole purpose of educating the Court about CARB's

11    interpretation and implementation of California's warranty requirements, and is not submitted on

12    behalf or in support of any particular party or filing.

13    3.      CARB promulgates regulations governing California's vehicle emissions warranty, which

14    are mainly codified in California Code of Regulations, title 13, sections 1900, 1962, 1962.2, and

15    2035 et seq.

16    4.      CARB's vehicle emissions warranty provisions apply to all California-certified 1979 and

17    subsequent model motorcycles, passenger cars, light-duty trucks, medium-duty vehicles, and

18    heavy-duty vehicles registered in California, regardless of their original point of registration; and

19    all California-certified motor vehicle engines used in such vehicles. (Cal. Code Regs., tit. 13, §§

20    2035, subd. (b).)

21    5.      CARB's vehicle emissions warranty provisions apply to an applicable vehicle, engine, or

22    part over a specified number of years and miles from the date that the vehicle is delivered to the

23    ultimate purchaser, as spelled out in CARB regulations, depending on the emission standard to

24    which the vehicle is certified. (Cal. Code Regs., tit. 13, §§ 2035, subd. (c)(3), 2037(a).) This is

25    known as the warranty period. (Cal. Code Regs., tit. 13, § 2035, subd. (c)(3).)

26    6.      A part subject to California's vehicle emission warranty is called a warranted part.

27    California Code of Regulations, title 13, section 2035 defines a warranted part as:

28    ///

1

(a)   For 1990 and subsequent model year passenger cars, light-duty trucks, and medium duty vehicles produced before January 24, 1991, any emission-related part installed on a motor vehicle or motor vehicle engine by the vehicle or engine manufacturer, or installed in a warranty repair, which is included on the "Emissions Warranty Parts List" required by section 2036(f) and approved for the vehicle or engine by the Executive Officer;

(b)   For 1990 and subsequent model year passenger cars, light-duty trucks, and medium-duty vehicles other than those identified in (a), above, any part installed on a motor vehicle or motor vehicle engine by the vehicle or engine manufacturer, or installed in a warranty repair, which affects any regulated emission from a motor vehicle or engine which is subject to California emission standards;

(c)   For heavy-duty vehicles certified to the GHG emission standards of California Code of Regulations, title 71, section 95663, any part included in 40 CFR 1037.102, as amended on October 25, 2016; and

(d)   For 2022 and subsequent model year diesel-powered heavy-duty vehicles greater than 14,000 pounds GVWR which are equipped with 2022 and subsequent model year heavy-duty diesel engines certified on only diesel fuel, and the 2022 and subsequent model year heavy-duty diesel engines certified on only diesel fuel in such vehicles, any part that:

   i.   affects any regulated emission of criteria pollutants from a motor vehicle or motor vehicle engine that is subject to California emission standards, including, at a minimum, those parts that are contained in the "Emissions Warranty Parts List" required by section 2036(f), and

   ii.   is installed on a motor vehicle or motor vehicle engine by the vehicle or engine manufacturer, or in a warranty repair.

7.   Warranted parts include any components that can or are required to illuminate the OBD Malfunction Indicator Light (MIL) in the event of a malfunction, even if the primary function of the component is not emission control, within the warranty period. (Cal. Code Regs., tit. 13, §

2

1   2037, subd. (b)(2).) The MIL is a light located on the driver's side instrument panel that, when

2   illuminated, is amber in color and displays "Check Engine/Powertrain," "Service

3   Engine/Powertrain Soon," or the International Standards Organization (ISO) engine symbol; the

4   MIL illuminates to notify the driver of detected malfunctions of OBD-monitored emissions

5   systems on the vehicle. (Cal. Code Regs., tit. 13, § 1968.2, subds. (a), (d)(2.1.1) & (2.2.).)

6   8.      One specific type of warranted part is an "emissions-related part." (Cal. Code Regs., tit. 13,

7   § 2035, subd. (c)(2)(B).) An "emissions-related part" is defined in California Code of

8   Regulations, title 13, section 1900, subdivision (b)(3), as

9              any automotive part, which affects any regulated emissions from a motor vehicle

10             which is subject to California or federal emission standards. This includes, at a

11             minimum, those parts specified in the "Emissions-Related Parts List," adopted by the

12             State Board on November 4, 1977, as last amended June 1, 1990.

13   9.      Another specific type of warranted part is a "high-priced part." A "high-priced warranted

14   part" is:

15      (a)    For 1990 through 2007 model year vehicles, parts that are included on the Board's

16             "Emissions Warranty Parts List" as last amended on February 22, 1985, and that have

17             an individual replacement cost at the time of certification exceeding the cost limit

18             defined in California Code of Regulations, title 13, section 2037, subdivision (c)(3);

19             and

20      (b)    For 2008 and subsequent model year vehicles, parts that are subject to coverage as a

21             warranted part in California Code of Regulations, title 13, section 2037, subdivision

22             (b)(2), and that have an individual replacement cost at the time of certification

23             exceeding the cost limit defined in section California Code of Regulations, title 13,

24             section 2037, subdivision (c)(3).

25   CARB regulations define the replacement cost as the retail cost to a vehicle owner, which

26   includes the cost of the part, labor, and standard diagnosis, in the highest-cost metropolitan area

27   of California. (Cal. Code Regs., tit. 13, § 2037, subd. (c)(2). CARB identifies the highest-cost

28   metropolitan area of California applicable to specified vehicle model years in Manufacturers

1   Advisory Correspondences it issues periodically. (*See, e.g.,* CARB Manufacturers Advisory

2   Correspondence No. 2021-01, at p. 2.)

3   10.    For each vehicle test group for which a manufacturer submits an application for

4   certification to CARB, a manufacturer must identify the "high-priced" warranted parts on the

5   vehicles in the test group, as well as specified supporting documentation. (Cal. Code Regs.,

6   tit. 13, § 2037, subds. (c)(1) & (5).) CARB may then "reject or require modification of the

7   manufacturer's list of "high-priced" warranted parts to ensure that such list includes all emission-

8   related parts whose replacement cost exceeds the cost limit" in California Code of Regulations,

9   title 13, section 2037, subd. (c)(3). (Cal. Code Regs., tit. 13, § 2037, subd. (c)(6).)

10  11.    When calculating the cost of labor portion of the replacement cost equation, in order to

11  determine if a part is a "high-priced" warranted part for the purposes of California Code of

12  Regulations, title 13, section 2037, subdivision (c), manufacturers first calculate the amount of

13  time it would take to diagnose and repair or replace the part (the labor hours). A dollar amount is

14  then attributed to the number of labor hours to come up with a cost of labor for each part. In doing

15  this, manufacturers should use the labor hours and associated costs that would be charged to

16  consumers to perform any required diagnosis and repairs to or replacement of the part, not the

17  labor hours that manufacturers' service dealerships are allowed to charge manufacturers.

18  12.    The repair or replacement of warranted parts still within the warranty period must be

19  performed at no charge to the vehicle or engine owner, except under circumstances specified in

20  the warranty regulations. (Cal. Code Regs., tit. 13, § 2037, subd. (d)(4).) Manufacturers may not

21  deny a warranty claim that would otherwise be covered under the California vehicle emissions

22  warranty requirements unless the manufacturer can prove both of the following:

23      (a)    the vehicle or engine has been abused, neglected, improperly maintained, or has

24             unapproved modifications, and

25      (b)    that such abuse, neglect, improper maintenance, or unapproved modification was the

26             direct cause of the need for the repair or replacement of the part.

27  ///

28  ///

4

(Cal. Code Regs., tit. 13, §§ 2037, subd. (i), 2039.) The fact that a vehicle has a salvage title, that a vehicle was sold for salvage purposes, or that a vehicle was declared a total loss does not, by itself, void the applicable California vehicle emissions warranty.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed by me on this sixth day of July, 2021, in Surprise, Arizona.

Allen Lyons

Decl. of Allen Lyons

Exhibit "2"
Internal CARB Memo

State of California
AIR RESOURCES BOARD

**PZEV 15/150k Warranty Issue**

**Background:**

The Air Resources Board received a consumer complaint regarding a 2007 Nissan Altima partial zero emissions vehicle (PZEV) with 122,232 miles. The complaint was regarding Nissan's denial of warranty coverage for a transmission replacement. The transmission needed to be replaced because of a malfunctioning pressure control solenoid (indicating imminent transmission failure). The failure of the component illuminated the vehicle's malfunction indicator light (MIL) and also caused it to fail Smog Check.

- The California Code of Regulations (CCR) Sections 1962.1, 2037(b)(2), and 2038(b)(2) require PZEV vehicles to have both a 15/150k defects and performance warranty.

- Our regulations, along with Nissan's warranty information to its customers, require the transmission problem to be repaired under warranty.

- OBD staff stated that the Nissan transmission replacement should be covered under the PZEV warranty due to the P0745 fault code causing the MIL to illuminate. Section 1968.2 of the CCR states that the OBD II system shall monitor for malfunction of any electronic powertrain component/system, including solenoids which provide signals to the powertrain control system. The implications of requiring transmission repair/replacement under the PZEV warranty could lead to strong opposition from Nissan and other manufacturers that would have handled this case in a similar manner.

- The Field Operations & Warranty Section conducted a dealership survey to evaluate the PZEV warranty practices of other manufacturers. Staff determined that the majority of dealerships were unaware of the PZEV warranty requirements and that many component failures that should have been covered under the PZEV warranty were denied coverage. This could be due to manufacturers not properly educating and training dealership staff, the software used at dealerships which cannot identify vehicles with PZEV coverage, and certain manufacturers not applying the warranty as defined in the CCR, but rather only applying it on a component specific basis.

**Recommendations:**

- ARB legal review of Nissan's warranty language to determine if transmissions are covered.
- Require Nissan to repair the transmission for the 2007 Altima under the PZEV warranty.
- Issue a MAC notifying all manufacturers of the requirements of the PZEV warranty, and informing them of their obligations to meet those requirements.
- Require all manufacturers to have its dealerships reimburse customers for repairs that should have been covered under the PZEV warranty.

Exhibit "3"
Bureau of Automotive Repair Smog Check Manual

# SMOG CHECK

# MANUAL

## November 2017



DEPARTMENT OF CONSUMER AFFAIRS

**Bureau of Automotive Repair**

# PREFACE

This manual is incorporated by reference in Section 3340.45, Title 16, of the California Code of Regulations.  It provides procedures for performing official Smog Check inspections.  Licensed Smog Check stations and inspectors must follow these procedures, and the BAR-97 Emission Inspection System, OBD Inspection System (OIS), and Low Pressure Fuel Evaporative Test (LPFET) equipment prompts when conducting Smog Check inspections.

**Department of Consumer Affairs**
**Bureau of Automotive Repair**
**10949 North Mather Boulevard**
**Rancho Cordova, CA 95670**

Suggestions for improvement to this manual are welcomed.  They should be directed to the Bureau of Automotive Repair, Smog Check Manual Author via email to bar.industryhelpdesk@dca.ca.gov.

SCM November 2017

## TABLE OF CONTENTS

Pre-Inspection / Pre-Repair Check List ............................................................................3

Test Requirements.......................................................................................................4

**Vehicle Identification**

1.1.0   Inspector Access ............................................................................................5

1.1.1   Vehicle Identification Information ...................................................................... 6-7

**Emissions Measurement Test (Gasoline Only)**

1.2.0   Before Test Conditions .................................................................................... 8-9

1.2.1   Acceleration Simulation Mode Emission Inspection.............................................. 10-11

1.2.2   Two Speed Idle ...............................................................................................12

1.2.3   Emission Test Abort Conditions.........................................................................13

1.2.4   Exhaust Sample Dilution .................................................................................14

**Visual Inspection**

1.3.0   Visual Inspection ............................................................................................15

1.3.1   Visual Inspection Procedures............................................................................ 17-19

1.3.2   Emission Control System Labels........................................................................20

1.3.3   Liquid Fuel Leak Inspection .............................................................................21

1.3.4   Visible Smoke Test..........................................................................................22

1.3.5   Visual Inspection Result Definitions ..................................................................23

**Emission Control Functional Tests**

1.4.0   Functional Test Application...............................................................................24

1.4.1   Malfunction Indicator Light...............................................................................24

1.4.2   OBD II Functional Test ...................................................................................25

1.4.3   Ignition Timing Test .......................................................................................26

1.4.4   EGR System Functional Test ............................................................................27

1.4.5   Fuel Cap Integrity Test ....................................................................................27

1.4.6   Low Pressure Fuel Evaporative Test ................................................................... 28-29

**Smog Check Inspection Results**

1.5.0   Vehicle Inspection Report.................................................................................30

1.5.1   Vehicle Passes Smog Check ..............................................................................30

1.5.2   Vehicle Fails Smog Check ................................................................................31

**Repair Data**

1.6.0   Repair Information Entry ..................................................................................32

**Miscellaneous**

1.7.0   Test Restrictions for Directed Vehicles ...............................................................33

1.7.1   Gross Vehicle Weight Rating ............................................................................33
1.7.2   Pre-Inspection Mode.........................................................................................34
1.7.3   Pre-Inspection Repair........................................................................................34

**Station Equipment Requirements**
1.8.0   Equipment and Reference Materials ............................................................ 35-38
1.8.1   Required Equipment Maintenance ....................................................................39
1.8.2   Required Equipment Electronic Transmission ................................................39
1.8.3   Required Equipment Location ...........................................................................39

**Appendix**
A   Visible Smoke Test (Gasoline) ............................................................................ 40-43
B   Visible Smoke Test (Diesel) ................................................................................. 44-46
C   Aftermarket Parts Verification Requirements.................................................... 47-52

# Tailpipe Emissions Inspection

## 1.2.3 Emission Test Abort Conditions (ASM/TSI)

If an inspector determines the vehicle is unsafe, unfit, or incompatible with the tailpipe emissions inspection, they shall reject the vehicle from the inspection, or if the inspection has started, abort the inspection.  Examples of unsafe, unfit, and incompatible conditions include, but are not limited to:

- Unsafe - gasoline leaks, large coolant leaks, faulty brakes, tire failure;

- Unfit - low oil pressure, overheating, idle RPM outside of required limits;

- Incompatible - traction control will not disengage.

The EIS will automatically abort the inspection for the following reasons:

- Test equipment failure;

- Test equipment power loss;

- The ASM test has been restarted more than twice; or

- Vehicle unable to achieve the required ASM speed.

In the case of an inspection abort, the EIS will display a list of abort codes.  Select the code(s) that best describes cause of the inspection abort.

If "OTHER" is used as the reason for abort, the inspector must document the specific reason(s) for the aborted inspection on all copies of the Vehicle Inspection Report.